115 Cal.Rptr.2d 192 (2002)
27 Cal.4th 1
37 P.3d 380
The PEOPLE, Plaintiff and Appellant,
v.
Ronald Stacy BUNN, Defendant and Respondent.
No. S086128.
Supreme Court of California.
January 10, 2002.
*194 Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, W. Scott Thorpe and Janet Gaard, Deputy Attorneys General, for Plaintiff and Appellant.
Peter Dodd, under appointment by the Supreme Court, for Defendant and Respondent.
*193 BAXTER, J.
In 1994 and thereafter, the Legislature established and amended a special supplementary statute of limitations for certain sex crimes against minors. (Pen.Code, § 803, subd. (g) (section 803(g)).)[1] Under specified circumstances, the 1994 law, as more recently refined, revives the limitations period for such offenses after the usual statute of limitations has expired, even if both the crime, and expiration of the usual limitations period, occurred before 1994. We found that these retroactive features did not offend either ex post facto or due process principles in People v. Frazer (1999) 21 Cal.4th 737, 88 Cal. Rptr.2d 312, 982 P.2d 180 (Frazer) (cert, den. sub nom. Frazer v. California (2000) 529 U.S. 1108, 120 S.Ct. 1960, 146 L.Ed.2d 792, rehg. den. (2000) 530 U.S. 1284, 120 S.Ct. 2765,147 L.Ed.2d 1023).
We granted review in this case and its companion, People v. King, 27 Cal.4th 29, 115 Cal.Rptr.2d 214, 37 P.3d 398 (2002) (King), to consider an additional narrow issue presented by this legislation. In 1996 and 1997, section 803(g) was amended to authorize, in certain circumstances, the filing of a molestation charge even where an accusatory pleading involving the same offense was previously dismissed as time-barred by the courts. The question is whether, and to what extent, the separation of powers clause of the California Constitution (art. III, § 3) precludes application of such a refiling provision.[2]
*195 Following Plant v. Spendthrift Farm, Inc. (1995) 514 U.S. 211, 115 S.Ct. 1447, 131 L.Ed.2d 328 (Plant), which we find both consistent with California law and persuasive for state separation of powers purposes, we conclude that refiling legislation cannot be applied retroactively to reopen court cases that had already been dismissed, if the dismissals had become final judgments, under the law of finality which then pertained, before the refiling provision became effective. In this sense, and for separation of powers purposes, such prior judgments are sacrosanct. On the other hand, as Plant itself explained, any dismissal that was already subject to a particular refiling law at the time the dismissal was entered or finally upheld cannot, to that extent, be deemed a final judgment immune from legislative interference. Hence, the refiling provision, as it existed at the time the dismissal was entered or finally upheld, may constitutionally permit reopening of the case.
As demonstrated here and in King, supra, 27 Cal.4th 29, 115 Cal.Rptr.2d 214, 37 P.3d 398, the relevant statutory provisions survive separation of powers scrutiny depending upon the particular circumstances of the case. In the present matter, the reinstituted complaint satisfied the requirements of the 1996 refiling provision that was already in effect when the Court of Appeal finally upheld the prior dismissal. Hence, prosecution of the instant case under the refiled complaint is not barred by the separation of powers clause. We reach the opposite conclusion, however, and do find a constitutional violation in King. There, the complaint was refiled under conditions that complied only with the 1997 version of section 803(g) not yet in effect when the prior judgment dismissing the same counts became final.

I. Procedural Background
This case tracks the history of section 803(g), which we described in Frazer, supra 21 Cal.4th 737, 743-749, 751-753, 88 Cal.Rptr.2d 312, 982 P.2d 180, and distill as necessary here.
Before 1994, felony sex crimes against children were governed solely by the statutes of limitation in section 799 et seq. These provisions require such prosecutions to commence within either three years (§ 801), or six years (§ 800), after commission of the crime. (See §§ 804, subds. (a) & (b) [providing that prosecution commences when the accusatory pleading is filed], 805, subd. (a) [basing the applicable limitations period on the maximum statutory punishment].)
In first enacting section 803(g) (Stats. 1993, ch. 390, § 1, p. 2226), the Legislature found that the limitation periods in sections 800 and 801 were inadequate in child molestation cases. Reliable accusations purportedly went unpunished "because the victimwho may `now [be] an adult'had waited to report the crime until after the existing statute of limitations had expired." (Frazer, supra, 21 Cal.4th 737, 763, fn. 24, 88 Cal.Rptr.2d 312, 982 P.2d 180.) Lawmakers cited the difficulty children have in recalling and recounting sexual abuse, and their vulnerability to adults in positions of authority and trust. (Id, at pp. 744, 763, fn. 24, 773, 88 Cal.Rptr.2d 312, 982 P.2d 180.)
Effective January 1, 1994, section 803(g) (the 1994 version or law) allowed a criminal complaint to be filed "within one year of the date of a report to a law enforcement agency by a person of any age alleging that he or she, while under the age of 18 years, was the victim of one or more specified serious sex offenses. The 1994 law applied only where: (1) the limitation period specified in section 800 or 801 had expired, (2) the crime involved substantial sexual conduct, and (3) independent evidence *196 clearly and convincingly corroborated the victim's allegation.[3] Because the statute of limitations in section 800 or 801 must first expire, the one-year period "serves to prolong, rather than shorten," the time for prosecuting enumerated crimes. (Frazer, supra, 21 Cal.4th 737, 752, 88 Cal.Rptr.2d 312, 982 P.2d 180.)
In a complaint filed January 25, 1995, and amended March 3, 1995 (the 1995 complaint), Ronald Stacy Bunn (defendant) was charged in Lake County Municipal Court with five counts of forcible rape of a person under age 18 (§ 261, subd. (a)(2)), and one count of oral copulation with a person under age 18 (§ 288a, subd. (b)(1)). Attached to the 1995 complaint and incorporated therein were investigative materials compiled by the local sheriffs department stating that the victim reported the crime on December 14, 1994. The charging documents also indicated that the crimes occurred between February and August 1981, that the victim was defendant's daughter, that she was 15 and 16 years old at the time of the crimes, and that relatives and friends could corroborate her account in certain respects. Based on this information, the 1995 complaint alleged that it satisfied the requirements of section 803(g) as originally constituted in 1994.
Defendant demurred on the ground any postcrime increase in the maximum six-year period applying under section 800 when the crimes allegedly occurred violated the federal and state Constitutions, including ex post facto guarantees. (See U.S. Const., art. I, § 10; Cal. Const., art. I, § 9.) The magistrate accepted the ex post facto claim, sustained the demurrer, and dismissed the case. The superior court denied the People's motion to reinstate the 1995 complaint.
The People appealed and lost. The Court of Appeal held that "at the time of its enactment," there was "no clear expression of legislative intent that section 803(g) would apply to revive chargessuch as the ones in this caseas to which the statute of limitations expired before January 1, 1994." (People v. Bunn (1997) 53 Cal. App.4th 227, 230-231, 61 Cal.Rptr.2d 734 (Bunn I).) The court further opined that even assuming section 803(g) applied retroactively under a 1996 amendment that took effect while the appeal was pending (see post, fn. 7), defendant's prosecution was barred on ex post facto grounds. This conclusion was based on Collins v. Youngblood (1990) 497 U.S. 37, 42, 110 S.Ct. 2715, 111 L.Ed.2d 30 (Collins), limiting postcrime withdrawal of a "`defense available . .. when the act was committed,'" and on Falter v. United States (2d Cir. 1928) 23 F.2d 420, 425-426 (Falter), condemning *197 postcrime "reviv[als of] a prosecution already dead." Thus, on February 28, 1997, the Court of Appeal affirmed the order denying reinstatement of the 1995 complaint. (Bunn I, supra, 53 Cal. App.4th at p. 239, 61 Cal.Rptr.2d 734.) We denied review on May 21, 1997. (Ibid.)
The 1997 decision in Bunn I was not the first of its kind. Several Court of Appeal opinions filed in 1995 and 1996[4]only one of which now appears in the California Official Reports[5]refused to apply the 1994 version of section 803(g) where the prosecution was already time-barred under existing laws on January 1, 1994, when section 803(g) became effective. Much like Bunn I, supra, 53 Cal.App.4th 227, 61 Cal.Rptr.2d 734, these decisions stressed the lack of express "retroactivity" and "revival" language in the 1994 law (see § 3), and claimed a contrary construction would violate the ban on ex post facto legislation. However, at least one Court of Appeal opinion originally published around the same time rejected these conclusions on both statutory and constitutional grounds.[6]
In response to the 1995 and 1996 appellate decisions declining to give the 1994 version of section 803(g) retroactive effect, the Legislature decided to revise the statute so that it could be used regardless of when the molestation occurred, or whether the limitations period in section 800 or 801 had run before 1994. (Frazer, supra, 21 Cal.4th 737, 752-753, 88 Cal.Rptr.2d 312, 982 P.2d 180.) Because the Courts of Appeal were divided on the point, lawmakers found no clear ex post facto bar against making such a change. (Ibid.)
Hence, a 1996 amendment to section 803(g) took effect January 1, 1997. (Stats. 1996, ch. 130, § 1 (the 1996 version or law).)[7] Another amendment occurred on *198 an urgency basis six months later, giving rise to the statute in its current form. (Stats.1997, ch. 29, §§ 1, 2, eff. June 30, 1997 (the 1997 version or law).)[8] We *199 summarize the statute after each set of changes was made.
First, like both the prior and subsequent versions, the 1996 law authorized the filing of a criminal complaint within one year of a report to a law enforcement agency by a person of any age claiming to be the victim of an enumerated sex crime while under the age of 18. (Former § 803(g)(1) (1996 version).) The 1996 law was no different from any other version insofar as it conditioned application of the one-year period on, among other things, expiration of the statute of limitations in section 800 or 801. (Former § 803(g)(2)(A) & (B) (1996 version).)
Second, the 1996 law added language that remains in the statute today, and that "revive[s]" the state's ability to prosecute enumerated crimes which occurred "before, on, or after January 1, 1994," including "any" crime "barred by Section 800 or 801." (Former § 803(g)(3)(A) & (B)(i) (1996 version).) In other words, both the 1996 and present versions of section 803(g) allow an accusatory pleading to be filed within one year of a qualifying report even where the defendant acquired a statute of limitations defense before 1994. As noted, this change addressed the 1995 and 1996 Court of Appeal decisions declining to give the 1994 law retroactive effect.
The third and final feature of the 1996 law was its unique "savings" clause. (Frazer, supra, 21 Cal.4th 737, 747, fn. 11, 88 Cal.Rptr.2d 312, 982 P.2d 180.) Under former section 803(g)(3)(B)(ii) (1996 version), the provisions of section 803(g) applied, and an otherwise time-barred action was "revived," where three conditions were met: (1) "[t]he victim made the report required by this subdivision to a law enforcement agency between January 1, 1994, and January 1, 1997," (2) "a complaint was not filed within the [one-year] time period specified in this subdivision or was filed within the time period but was dismissed," and (3) "a complaint is filed or refiled on or before June 30, 1997." (Italics added.)
Thus, as pertinent here, former section 803(g)(3)(B)(ii) (1996 version)hereafter, the 1996 refiling provisiongave prosecutors an additional six-month period from January 1, 1997, when the 1996 law took effect, through June 30, 1997, when such period expired by its own terms, to refile complaints that were dismissed under section 803(g) before it contained express retroactivity and revival language. (See former § 803(g)(3)(B) (1996 version) [confirming that the 1996 refiling provision was "[e]ffective January 1, 1997, through June 30, 1997"].) The apparent purpose was to prevent the affected group from escaping prosecution, or from receiving more favorable statute of limitations treatment than other molestation defendants whose cases were never prosecuted under the 1994 version of section 803(g), or, if so prosecuted, were not dismissed by virtue of any ambiguity in the 1994 law.
In fact, the 1996 and 1997 laws differ only insofar as the latter version expanded and replaced features that otherwise expired on June 30, 1997. As a threshold matter, the new provisions of the 1997 law took effect when such expiration was imminent.[9] The 1997 provisions concern cases *200 in which the victim made the requisite report "after January 1, 1994," and in which an accusatory pleading either "was not filed" within the one-year limitations period (§ 803(g)(3)(A)(iii)), or "was filed within the time period ... but ... was dismissed." (§ 803(g)(3)(A)(iv), italics added.)
Where the foregoing circumstances exist, the 1997 law provides that section 803(g) applies, and an otherwise time-barred action is "revived," where a complaint or indictment is filed, or refiled, "no later than 180 days after the date on which either a published opinion of the California Supreme Court, deciding the question of whether retroactive application of this subdivision is constitutional, becomes final or the United States Supreme Court files an opinion deciding [such] question ..., whichever occurs first." (§ 803(g)(3)(A)(iii) & (iv), italics added.) For "new" accusatory pleadings submitted after a prior "dismiss[al]" under section 803(g)(3)(A)(iv)hereafter, the 1997 refiling provisionrelated language clarifies that the new 180-day period may be invoked notwithstanding any other statutory bar to refiling (§ 803(g)(3)(B)(i) & (ii)), and notwithstanding any ruling made in the prior proceeding concerning the retroactivity or constitutionality of the statute. (§ 803(g)(3)(B)(iii).) According to the legislative history, the 1997 law made these "technical, procedural" changes (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 700 (1997-1998 Reg. Sess.) as amended June 3, 1997, p. 6) in an ongoing effort to cover "all cases" involving the enumerated crimes, including those previously charged under the 1994 law and dismissed (id. at p. 5).
In August 1999, Frazer, supra, 21 Cal.4th 737, 88 Cal.Rptr.2d 312, 982 P.2d 180, upheld use of section 803(g)'s one-year limitations period in actions time-barred before 1994, and thus decided that "retroactive application" of the statute "is constitutional," as anticipated in the 1997 law. (§ 803(g)(3)(A)(iii) & (iv).) In Frazer, supra, at pages 757-765, 88 Cal.Rptr .2d 312, 982 P.2d 180, we held that the statute of limitations is not a defense entitled to ex post facto protection under Collins, supra, 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30, and declined to follow contrary dictum in Falter, supra, 23 F.2d 420, 425-426. In the process, the decisions in Bunn I, supra, 53 Cal.App.4th 227, 61 Cal.Rptr.2d 734, and Lynch I, supra, 33 Cal.App.4th 1223, 39 Cal.Rptr.2d 414 (see ante, fn. 5), were disapproved. (Frazer, supra, 21 Cal.4th at pp. 760, fn. 22, 765, 88 Cal. Rptr.2d 312, 982 P.2d 180.) Frazer also rejected various due process challenges to the one-year provision that had not been considered in either Bunn I, supra, 53 Cal.App.4th 227, 61 Cal.Rptr.2d 734, or Lynch I, supra, 33 Cal.App.4th 1223, 39 Cal.Rptr.2d 414.[10]
*201 Meanwhile, before we decided Frazer, supra, 21 Cal.4th 737, 88 Cal.Rptr.2d 312, 982 P.2d 180, the People invoked the 1996 refiling provision against defendant. On June 30, 1997the last day of the six-month period in former section 803(g)(3)(B)(ii) (1996 version)a complaint was filed in Lake County Municipal Court alleging five counts of forcible rape and one count of oral copulation against defendant's daughter, a minor, in 1981 (the 1997 or refiled complaint). The allegations mirrored those previously made in 1995 and dismissed in Bunn I, supra, 53 Cal. App.4th 227, 61 Cal.Rptr.2d 734. A few weeks later, on July 17, the 1997 complaint was amended to also allege compliance with the 1997 refiling provision, which had since taken effect.[11]
A preliminary hearing was held in July 1998. Afterwards, the magistrate found "more than sufficient" evidence to hold defendant to answer on all six counts reinstituted by the 1997 complaint as originally filed to satisfy the 1996 law, and as subsequently amended to satisfy the 1997 law. The magistrate reached the same conclusion with respect to evidence, adduced at the hearing, of one additional act of oral copulation that had not previously been charged, and that reportedly occurred during one of the 1981 incidents otherwise covered by the 1997 complaint. On August 10, 1998, the People filed an information in superior court charging defendant with all seven of the foregoing crimes.
In September 1998, defendant moved to dismiss the information. He claimed, among other things, that section 803(g) violated ex post facto guarantees, and that collateral estoppel principles compelled adherence to Bunn I, supra, 53 Cal. App.4th 227, 61 Cal.Rptr.2d 734, in this regard. The superior court reluctantly agreed. While the preliminary hearing evidence suggested that defendant had sexually assaulted his daughter as charged, the court felt powerless to "reverse" Bunn I's determination that section 803(g) could not be used to prosecute crimes time-barred before 1994. On September 18, 1998, the superior court granted defendant's motion to dismiss the information.
The People appealed, and the dismissal entered by the superior court was reversed. The Court of Appeal found no ex *202 post facto violation under Frazer, supra, 21 Cal.4th 737, 88 Cal.Rptr.2d 312, 982 P.2d 180, which issued while the present appeal was pending, and which disapproved Bunn I, supra, 53 Cal.App.4th 227, 61 Cal.Rptr.2d 734. In finding no other bar to use of section 803(g) against defendant, the Court of Appeal rejected his claim that the state separation of powers doctrine precluded the refiling of previously dismissed counts. The court's opinion focused on the most recent version of the statute, apparently finding it constitutional per se. Nothing in the 1997 law suggested to the court that the Legislature intended to review the merits of final judgments, or to direct courts to adjudicate refiled counts in a particular manner. While the Court of Appeal relied solely on California case law, it disagreed with People v. Lynch (1999) 69 Cal.App.4th 313, 81 Cal. Rptr.2d 552 (Lynch IF), which declined, on separation of powers grounds, to apply the 1997 refiling provision.
Defendant's petition for review was granted. We limited briefing and argument to the constitutionality of section 803(g)'s refiling provisions under the separation of powers doctrine in article III, section 3 of the state Constitution.

II. DISCUSSION
The California Constitution establishes a system of state government in which power is divided among three coequal branches (Cal. Const., art. IV, § 1 [legislative power]; Cal. Const., art. V, § 1 [executive power]; Cal. Const., art. VI, § 1 [judicial power]), and further states that those charged with the exercise of one power may not exercise any other (Cal. Const., art. III, § 3). Notwithstanding these principles, it is well understood that the branches share common boundaries (Hustedt v. Workers' Comp. Appeals Bd. (1981) 30 Cal.3d 329, 338, 178 Cal.Rptr. 801, 636 P.2d 1139), and no sharp line between their operations exists. (Superior Court v. County of Mendocino (1996) 13 Cal.4th 45, 52, 51 Cal.Rptr.2d 837, 913 P.2d 1046 (Mendocino); see Davis v. Municipal Court (1988) 46 Cal.3d 64, 76, 249 Cal.Rptr. 300, 757 P.2d 11 (Davis) ["`From the beginning, each branch has exercised all three kinds of powers.'"].)
Indeed, the "sensitive balance" underlying the tripartite system of government assumes a certain degree of mutual oversight and influence. (Harbor v. Deukmejian (1987) 43 Cal.3d 1078, 1086, 240 Cal.Rptr. 569, 742 P.2d 1290; see Mendocino, supra, 13 Cal.4th 45, 53, 51 Cal.Rptr.2d 837, 913 P.2d 1046 ["the judiciary passes upon the constitutional validity of legislative and executive actions, the Legislature enacts statutes that govern the procedures and evidentiary rules applicable in judicial and executive proceedings, and the Governor appoints judges and participates in the legislative process through the veto power"].)
Despite this interdependence, the Constitution does vest each branch with certain "core" (Carmel Valley Fire Protection Dist. v. State of California (2001) 25 Cal.4th 287, 297, 105 Cal.Rptr.2d 636, 20 P.3d 533 (Carmel)) or "essential" (Butt v. State of California (1992) 4 Cal.4th 668, 700, fn. 26, 15 Cal.Rptr.2d 480, 842 P.2d 1240) functions that may not be usurped by another branch. We focus here on the constitutional roles of the Legislature and the judiciary, particularly with respect to criminal statutes of limitation and judgments of dismissal obtained thereunder.
The Legislature is charged, among other things, with "mak[ing] law ... by statute." (Cal. Const., art. IV, § 8, subd. (b).) This essential function embraces the far-reaching power to weigh competing *203 interests and determine social policy. (Carmel, supra, 25 Cal.4th 287, 299, 105 Cal.Rptr.2d 636, 20 P.3d 533; Connecticut Indemnity Co. v. Superior Court (2000) 23 Cal.4th 807, 814, 98 Cal.Rptr.2d 221, 3 P.3d 868; see Nougues v. Douglass (1857) 7 Cal. 65, 70 [describing the legislative power as the "creative element" of government].)
Such nuanced determinations underlie the existence and nature of any statutory time bar in criminal cases. (See Frazer, supra, 21 Cal.4th 737, 758 & fn. 19, 88 Cal.Rptr.2d 312, 982 P.2d 180 [noting that criminal statutes of limitation are "an optional form of `legislative grace,'" and that they are not constitutionally compelled]; id. at p. 770, 88 Cal.Rptr.2d 312, 982 P.2d 180 [indicating that such laws carefully balance society's interest in repose against the need to prosecute crime].) No less the product of competing policy choices is the decision to make any statute retroactive (Evangelatos v. Superior Court (1988) 44 Cal.3d 1188, 1206, 246 Cal.Rptr. 629, 753 P.2d 585), and the enactment of rules regulating the dismissal and refiling of criminal counts. (E.g., §§ 999 [permitting reprosecution of an offense following an order setting aside an indictment or information as defined in the statute], 1010 [contemplating orders directing the filing of a new information after a demurrer is sustained and the action is dismissed as defined in the statute], 1387, subd. (a) [permitting reprosecution of a felony following one prior order terminating the action as defined in the statute], 1387.1, subd. (a) [allowing the refiling of a violent felony charge following two prior dismissals as defined in the statute].)
Quite distinct from the broad power to pass laws is the essential power of the judiciary to resolve "specific controversies" between parties. (Mandel v. Myers (1981) 29 Cal.3d 531, 547, 174 Cal.Rptr. 841, 629 P.2d 935 (Mandel).) In such proceedings, existing laws, like criminal statutes of limitation, are interpreted and applied. (See California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist. (1997) 14 Cal.4th 627, 632-633, 59 Cal.Rptr.2d 671, 927 P.2d 1175 (California Teachers) [describing the judicial role of construing statutes consistent with their plain meaning and other indicia of legislative intent]; Marin Water etc. Co. v. Railroad Com. (1916) 171 Cal. 706, 712, 154 P. 864 [noting that judicial controversies are resolved under "`laws supposed already to exist'"].)
The courts also decide on an appropriate case-by-case basis whether constitutional, jurisdictional, or tactical concerns bar enforcement of criminal statutes of limitation. (See, e.g., Frazer, supra, 21 Cal.4th 737, 754-775, 88 Cal.Rptr.2d 312, 982 P.2d 180 [rejecting ex post facto and due process challenges to § 803(g)]; People v. Williams (1999) 21 Cal.4th 335, 341-346, 87 Cal.Rptr.2d 412, 981 P.2d 42 [limiting the circumstances under which criminal statutes of limitation may be forfeited]; Cowan v. Superior Court (1996) 14 Cal.4th 367, 373-374, 58 Cal.Rptr.2d 458, 926 P.2d 438 [holding that such statutes do not implicate fundamental subject matter jurisdiction].) In general, the "power to dispose" of criminal charges belongs to the judiciary. (People v. Birks (1998) 19 Cal.4th 108, 136, 77 Cal.Rptr.2d 848, 960 P.2d 1073, italics omitted; see People v. Superior Court (Romero) (1996) 13 Cal.4th 497, 512, 53 Cal.Rptr.2d 789, 917 P.2d 628.)
The separation of powers doctrine protects each branch's core constitutional functions from lateral attack by another branch. As noted, however, this does not mean that the activities of one branch are entirely immune from regulation or oversight by another. We have regularly approved *204 legislation affecting matters over which the judiciary has inherent power and control. (See, e.g., Obrien v. Jones (2000) 23 Cal.4th 40, 47-57, 96 Cal.Rptr.2d 205, 999 P.2d 95 [statute changing the Supreme Court's authority to appoint State Bar Court judges]; Mendocino, supra, 13 Cal.4th 45, 58-66, 51 Cal.Rptr.2d 837, 913 P.2d 1046 [statute designating unpaid furlough days on which trial courts shall not be in session]; Solberg v. Superior Court (1977) 19 Cal.3d 182, 191-204, 137 Cal.Rptr. 460, 561 P.2d 1148 [statute allowing trial judges to be peremptorily disqualified by litigants]; In re McKinney (1968) 70 Cal.2d 8, 10-13, 73 Cal.Rptr. 580, 447 P.2d 972 [statute fixing the punishment for witnesses found in contempt of court].) As long as such enactments do not "`defeat' or `materially impair'" the constitutional functions of the courts, a "reasonable" degree of regulation is allowed. (Mendocino, supra, 13 Cal.4th at p. 58, 51 Cal.Rptr.2d 837, 913 P.2d 1046.)
Nevertheless, the separation of powers doctrine prohibits the Legislature "from arrogating to itself core functions of the executive or judicial branch." (Carmel, supra, 25 Cal.4th 287, 298, 105 Cal. Rptr.2d 636, 20 P.3d 533.) No branch of government can exercise "`the complete power constitutionally vested in another.'" (Ibid., quoting Younger v. Superior Court (1978) 21 Cal.3d 102, 117, 145 Cal.Rptr. 674, 577 P.2d 1014, original italics.) The Constitution thereby seeks to avoid both the "concentration of power in a single branch of government," and the "overreaching" by one branch against the others. (Kasler v. Lockyer (2000) 23 Cal.4th 472, 495, 97 Cal.Rptr.2d 334, 2 P.3d 581; see Davis, supra, 46 Cal.3d 64, 76, 249 Cal.Rptr. 300, 757 P.2d 11 [noting that the doctrine prevents "`the combination in the hands of a single person or group of the basic or fundamental powers of government'"].)
Regarding the core functions discussed above, separation of powers principles compel courts to effectuate the purpose of enactments (California Teachers, supra, 14 Cal.4th 627, 632, 59 Cal. Rptr.2d 671, 927 P.2d 1175), and limit judicial efforts to rewrite statutes even where drafting or constitutional problems may appear. (People v. Garcia (1999) 21 Cal.4th 1, 14, 87 Cal.Rptr.2d 114, 980 P.2d 829; Kopp v. Fair Pol. Practices Com. (1995) 11 Cal.4th 607, 660-661, 47 Cal. Rptr.2d 108, 905 P.2d 1248.) The judiciary may be asked to decide whether a statute is arbitrary or unreasonable for constitutional purposes (e.g., Frazer, supra, 21 Cal.4th 737, 773, 88 Cal.Rptr.2d 312, 982 P.2d 180), but no inquiry into the "wisdom" of underlying policy choices is made. (Lockard v. City of Los Angeles (1949) 33 Cal.2d 453, 461, 202 P.2d 38.)
By the same token, direct legislative influence over the outcome of judicial proceedings is constitutionally constrained. Thus, it has been said that the Legislature cannot "interpret]" a statute or otherwise bind the courts with a post hoc "declaration" of legislative intent. (Hunt v. Superior Court (1999) 21 Cal.4th 984, 1007, 90 Cal.Rptr.2d 236, 987 P.2d 705 (Hunt).) Separation of powers principles do not preclude the Legislature from amending a statute and applying the change to both pending and future cases, though any such law cannot "readjudicat[e]" or otherwise "disregard" judgments that are already "final." (Mandel, supra, 29 Cal.3d 531, 547, 174 Cal.Rptr. 841, 629 P.2d 935; see id. at pp. 545-551, 174 Cal. Rptr. 841, 629 P.2d 935 [rejecting legislative attempt, as part of state budget process, to review the merits of an attorney fee award previously entered against the state and affirmed on appeal]; Hunt, supra, *205 21 Cal.4th at p. 1008, 90 Cal.Rptr.2d 236, 987 P.2d 705 [indicating that judgments do not become final for separation of powers purposes until both the trial and appellate process is complete, and the case is no longer pending in the courts].)
Here, as below, defendant claims section 803(g) thwarts final judgments insofar as it allows the People to timely refile, as part of the 1997 complaint, six molestation counts that were previously included in the 1995 complaint and dismissed under Bunn I, supra, 53 Cal.App.4th 227, 61 Cal. Rptr.2d 734. Defendant observes that similar concerns were addressed for federal separation of powers purposes in Plant, supra, 514 U.S. 211, 115 S.Ct. 1447, 131 L.Ed.2d 328, and suggests the latter decision should guide our resolution of his analogous state law claim. For reasons explained below, we agree that Plant's analytical framework applies here. However, contrary to what defendant assumes, careful examination of Plant reveals that the instant prosecution is not constitutionally flawed.
Plant concerned a civil action filed in federal district court in 1987 alleging the fraudulent sale of securities in 1983 and 1984 in violation of substantive federal law. (See Securities Exchange Act of 1934 (the SEC Act), § 10(b), 15 U.S.C. § 78j(b) (section 10(b) of the SEC Act).) From the time the alleged fraud occurred through the time the Plant suit was filed, federal courts were required to "borrow" the analogous state statute of limitations in the jurisdiction in which such actions were pending. The defendant in Plant moved to dismiss the complaint because it was filed more than three years after the alleged fraud occurred, and because it was allegedly untimely under applicable state law. The plaintiffs countered that the three-year state law period had not expired because it ran from the time the alleged fraud was, or should have been, discovered. (Plaut, supra, 514 U.S. 211, 213, 115 S.Ct. 1447, 131 L.Ed.2d 328; see id. at pp. 249-250, 115 S.Ct. 1447 (dis. opn. of Stevens, J.).)
On June 20, 1991, before the district court resolved the timeliness issue argued by the parties in Plaut, the United States Supreme Court changed the controlling law and decided Lampf v. Gilbertson (1991) 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (Lampf). In Lampf, the court adopted a uniform federal limitations rule requiring actions under section 10(b) of the SEC Act to commence within one year of the time the violation was discovered, and within three years of the time the violation occurred. Moreover, this new rule applied in Lampf itself, and in all cases then pending under section 10(b) of the SEC Act. The effect was to retroactively shorten the statute of limitations in actions which, like Plaut, were not necessarily time-barred under pre-Lampf law. Based on Lampf the district court determined that the complaint in Plaut was untimely, and the case was dismissed on August 13, 1991. The decision became final on September 12, 1991. (Plaut, supra, 514 U.S. 211, 214, 115 S.Ct. 1447, 131 L.Ed.2d 328; see id. at pp. 250-251, 115 S.Ct. 1447 (dis. opn. of Stevens, J.).)
Congress promptly responded to Lampf, supra, 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321, by passing section 27A of the SEC Act, which became effective December 19, 1991. (15 U.S.C. § 78aa-l (section 27A).) This provision did not affect Lampf insofar as it established a uniform federal limitations period in actions filed under section 10(b) of the SEC Act after Lampf. However, through section 27A, Congress repudiated the high court's decision to apply Lampf retroactively, and restored the pre-Lampf limitations rule in two kinds of actions commenced before June 20, 1991, *206 when Lampf was filed: (1) cases which were still pending on December 19, 1991, when section 27A took effect, and (2) cases which were dismissed as time-barred between June 20 and December 19,1991, and which were timely when filed. By its terms, section 27A allowed plaintiffs to seek reinstatement of dismissed actions no more than 60 days after the statute took effect. (Plaut, supra, 514 U.S. 211, 214-215, 115 S.Ct. 1447, 131 L.Ed.2d 328; see id. at p. 251, 115 S.Ct. 1447 (dis. opn. of Stevens, J.).)
Complying with all statutory requirements, the plaintiffs in Plaut moved to reinstate their lawsuit under section 27A of the SEC Act. The district court denied the request on the ground the statute violated separation of powers principles insofar as it contemplated the reinstatement of actions that had been dismissed as time-barred under Lampf The ruling was upheld on appeal. The United States Supreme Court affirmed. (Plaut, supra, 514 U.S. 211, 215, 240, 115 S.Ct. 1447, 131 L.Ed.2d 328.) According to Plaut at pages 217-218, 115 S.Ct. 1447, Congress "exceeded its authority by requiring the federal courts to exercise `[t]he judicial Power of the United States,' U.S. Const., Art. III, § 1, in a manner repugnant to the text, structure, and traditions of Article III."
The high court started from the premise that, under the United States Constitution's tripartite system of government, there exists a judicial branch separate and independent from the legislative branch. (Plaut, supra, 514 U.S. 211, 221, 115 S.Ct. 1447.) The court noted that while the legislature makes and prescribes the law (id. at p. 222, 115 S.Ct. 1447), the essential function of the judiciary is to interpret statutes (id. at p. 222, 115 S.Ct. 1447), and to decide individual cases and controversies arising thereunder (id. at pp. 218-219, 115 S.Ct. 1447).
Plaut also observed that the balance created by this constitutional division between the legislative and judicial departments serves in large part to prevent "interference with the final judgments of courts." (Plaut, supra, 514 U.S. 211, 223, 115 S.Ct. 1447, 131 L.Ed.2d 328; see id. at pp. 221, 222, 115 S.Ct. 1447.) In an extensive historical discussion, the high court emphasized the Framers' interest in eliminating the colonial practice by which assemblies and legislatures either functioned as equitable courts of last resort, hearing original actions and providing appellate review of judicial decisions, or enacted special bills to vacate judgments and order new trials or appeals. (Id. at pp. 219-225, 115 S.Ct. 1447.)
Against this backdrop, Plaut, supra, 514 U.S. 211, 115 S.Ct. 1447, 131 L.Ed.2d 328, declared, in almost talismanic form, that Congress lacks the power to "reopen" (id. at pp. 219, 234, 240, 115 S.Ct. 1447), "correct" (id. at p. 219, 115 S.Ct. 1447), "`reverse' " (id. at pp. 220, 222, 225, 115 S.Ct. 1447), "revise" (id. at pp. 226, 233, 115 S.Ct. 1447), "vacate" (id. at p. 224, 115 S.Ct. 1447), or "annul" (ibid.) final court judgments. The controlling separation of powers principle was stated as follows: "Having achieved finality, ... a judicial decision becomes the last word of the judicial department with regard to a particular case or controversy, and Congress may not declare by retroactive legislation that the law applicable to that very case was something other than what the courts said it was." (Id. at p. 227, 115 S.Ct. 1447, original italics.)
In Plaut, both the plaintiffs and the court minority raised various arguments in an attempt to exempt section 27A of the SEC Act from the foregoing rule. All were unsuccessful. For example, the *207 Plant majority rejected any suggestion that judgments of dismissal enforcing a statute of limitations are "uniquely subject to congressional nullification." (Plaut, supra, 514 U.S. 211, 228, 115 S.Ct. 1447, 131 L.Ed.2d 328.) The court observed that whether an action was dismissed on statute of limitation grounds or for some other reasonsuch as failure to state a claim, to prove substantive liability, or to prosecuteit has, for separation of powers purposes, the same conclusive effect under procedural rules governing actions filed in federal court. Plaut saw no reason to depart from such "statutory and judge made" rules of finality for constitutional purposes, or to otherwise forgo separation of powers protection for judgments that "rested on the bar of a statute of limitations." (Ibid.)[12]
In a related vein, Plaut determined that the judgments covered by section 27A of the SEC Act were not vulnerable to legislative attack simply because the actions had previously been dismissed under a limitations period created by the court itself in Lampf, supra, 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321, rather than by Congress. Indeed, Plaut admonished, the operative separation of powers rule was neither triggered nor affected by congressional disagreement with the substantive reasoning of Lampf. According to Plaut, the constitutionality of section 27(A) concerned, "not the validity or even the source of the legal rule that produced the Article III judgments, but rather the immunity from legislative abrogation of those judgments themselves. The separation-of-powers question before us has nothing to do with Lampf . . .." (Plaut, supra, 514 U.S. 211, 230, 115 S.Ct. 1447, 131 L.Ed.2d 328; see id. at p. 228, 115 S.Ct. 1447 [noting that the separation of powers doctrine is violated "when an individual final judgment is legislatively rescinded for even the very best of reasons, such as the legislature's genuine conviction ... that the judgment was wrong" (original italics])
Moreover, notwithstanding the constitutional protection afforded final judgments on an individual basis, section 27A of the SEC Act did not somehow escape separation of powers scrutiny merely because the reopening provision affected "a whole class of cases." (Plaut, supra, 514 U.S. 211, 227, 115 S.Ct. 1447, 131 L.Ed.2d 328.) The court reiterated that a separation of powers violation occurs when postjudgment legislation deprives court decisions "of the conclusive effect that they had when they were announced." (Id. at p. 228, 115 S.Ct. 1447.) Thus, whether a statute targets particular suits or parties, or whether it purports to apply more generally like section 27A, the critical factor for separation of powers purposes is *208 whether such impermissible legislative interference with final judgments has occurred. (Plaut, supra, 514 U.S. at p. 228, 115 S.Ct. 1447; see id. at p. 238, 115 S.Ct. 1447 [confirming that a separation of powers violation does not require any "`singling out'" of individual court cases].)
Notwithstanding the foregoing analysis, the circumstances under which a judgment achieves finality and is therefore immune from legislative interference are clearly limited under Plaut. First, the high court included in the constitutionally protected category only those decisions that represent "the final word of the [judicial] department as a whole," as expressed by "the last court in the hierarchy that rules on the case." (Plaut, supra, 514 U.S. 211, 227, 115 S.Ct. 1447, 131 L.Ed.2d 328, italics added.) Plaut explained that because the judicial branch consists of both inferior and reviewing courts, a judgment has no conclusive effect untilunder procedural statutes and rules then in existenceeither the time for appealing an inferior court decision has expired, or such an appeal has been pursued and the review process is complete. (Ibid.) For this reason, Plaut observed, separation of powers principles are not implicated, and an inferior court decision has not been impermissibly revised, where a reviewing court applies a new retroactive statute to cases "still [pending] on appeal." (Id. at p. 226, 115 S.Ct. 1447; see id. at p. 233, fn. 7, 115 S.Ct. 1447.) Under such circumstances, no final judgment was obtained for federal constitutional purposes before the substantive law changed.
Second, Plaut established that statutory limitations on the conclusive effect of judgments are not impermissibly retroactive and can constitutionally be applied as long as they were already in existence when the judiciary gave its "last word" in the particular case. (Plaut, supra, 514 U.S. 211, 227, 115 S.Ct. 1447, 131 L.Ed.2d 328.) Stated differently, the high court found nothing to prevent Congress from authorizing or requiring the reinstatement of a dismissed action where the prior judgment otherwise becomes final for separation of powers purposes after the law's effective date. (Id. at p. 234, 115 S.Ct. 1447.)
Plaut's reasoning on this core point was clear: "The relevant retroactivity, of course, consists not of the requirement that there be set aside a judgment that has been rendered prior to its being set[] asidefor example, a statute passed today which says that all default judgments rendered in the future may be reopened within 90 days after their entry. In that sense, all requirements to reopen are `retroactive,' and the designation is superfluous. Nothing we say today precludes a law such as that. The finality that a court can pronounce is no more than what the law in existence at the time of judgment will permit it to pronounce. If the law then applicable says that the judgment may be reopened for certain reasons, that limitation is built into the judgment itself, and its finality is so conditioned." (Plaut, supra, 514 U.S. 211, 234, 115 S.Ct. 1447, 131 L.Ed.2d 328, original italics omitted and new italics added.)
In Plaut itself, the challenged provision could not constitutionally be applied because it was not "built into" the judgment of dismissal for which reopening was sought. Specifically, the high court invalidated section 27A of the SEC Act insofar as it contemplated the reinstatement of actions which had been dismissed as time-barred and reduced to final judgment before the statute's effective date. Under Plaut's separation of powers analysis, Congress was without power to subject judgments of dismissal to a retroactive reopening provision not in existence when those judgments achieved conclusive effect. *209 (Plaut, supra, 514 U.S. 211, 225, 227, 234, 240, 115 S.Ct. 1447, 131 L.Ed.2d 328.)[13]
We find Plaut persuasive for purposes of interpreting California's separation of powers clause. (See Mendocino, supra, 13 Cal.4th 45, 53, 51 Cal.Rptr.2d 837, 913 P.2d 1046 [citing Plaut, supra, 514 U.S. 211, 115 S.Ct. 1447, 131 L.Ed.2d 328, as support for the state separation of powers prohibition against statutes that "readjudicate" cases already resolved by "final" judgment].) Consistent with the California principles and authorities discussed above, Plaut properly preserves and balances the respective "core functions" of the two branches. (Carmel, supra, 25 Cal.4th 287, 298, 105 Cal.Rptr.2d 636, 20 P.3d 533.) On the one hand, Plaut recognizes the core judicial power to resolve "specific controversies" (Mandel, supra, 29 Cal.3d 531, 547, 174 Cal.Rptr. 841, 629 P.2d 935) between parties by judgments that are "final" under laws then extant (ibid.), and holds such final dispositions inviolate from legislative "disregard" (ibid.). On the other hand, Plaut acknowledges the paramount legislative power to "make" law by statute (Cal. Const., art. IV, § 8, subd. (b)), to apply new laws to all cases still pending at either the trial or the appellate level (Hunt, supra, 21 Cal.4th 984, 1008, 90 Cal.Rptr.2d 236, 987 P.2d 705), and to regulate, within reasonable limits, the practices and procedures by which judicial matters are to be resolved. (Mendocino, supra, 13 Cal.4th 45, 58, 51 Cal.Rptr.2d 837, 913 P.2d 1046.) When the finality of a judicial determination is limited or conditioned by the terms of a general statute already in effect when the determination is made, application of the statute according to its terms is but a "`reasonable,'" and therefore permissible, legislative restriction upon the constitutional function of the judiciary; it does not "`defeat or materially impair'" that function. (Ibid.) Because we therefore conclude that Plaut, supra, 514 U.S. 211, 115 S.Ct. 1447, 131 L.Ed.2d 328, is in clear conformity with California law, we follow it here.[14]
*210 We note that Plaut's constitutional analysis has similarly been adopted by the high courts of other states. All such courts addressing the issue have found, under authority of Plaut, that separation of powers principles are offended if, but only to the extent that, a statute permits the reopening of a case which was not subject to such reopening under the law in effect when the highest court to consider the matter finally determined it. (E.g., Ex Parte Jenkins (Ala. 1998) 723 So.2d 649, 653-660 (lead opn. of See, J.) (Jenkins) [authorizing the reopening of a 12 year old paternity judgment consistent with the requirements of a statute in effect when finality occurred]; Quinton v. General Motors Corp. (1996) 453 Mich. 63, 551 N.W.2d 677, 689 (lead opn. of Levin, J.) [applying statutory amendment retroactively affecting the amount of workers' compensation benefits awarded in court where the award was subject to change both by its inherent nature and express terms]; Savannah III v. Pub. School Ret. Sys. (Mo.1997) 950 S.W.2d 854, 858-859 [applying statutory amendment abrogating an intermediate appellate decision previously entered in the same public pension dispute where the case was pending on remand in the trial court when the law changed].)
Of particular interest is Jenkins, supra, 723 So.2d 649, which demonstrates that a case can be refiled and relitigated to the extent such statutory conditions are "built into the judgment itself." (Plaut, supra, 514 U.S. 211, 234, 115 S.Ct. 1447, 131 L.Ed.2d 328.) In Jenkins, a mother obtained a 1986 judgment identifying her ex-husband as the biological father of her child and ordering him to pay child support. When the mother sought increased child support in 1995, the ex-husband moved to relitigate and reverse the prior judgment based on DNA evidence excluding him as the biological father, and on information concerning the mother's sexual relationship with another man at the time of conception. The ex-husband invoked: (1) a statute in effect in 1986 permitting the reopening of such cases within a reasonable time after a doubt as to paternity arose (the 1986 statute), and (2) a 1994 statute requiring the reopening of a paternity case whenever the previously adjudicated father thereafter presents exculpatory scientific evidence (the 1994 statute). In a ruling affirmed on appeal, the trial court used the 1994 statute to grant the requested relief. (Jenkins, supra, 723 So.2d at pp. 651-652 (lead opn. of See, J.).)
Following Plaut, supra, 514 U.S. 211, 115 S.Ct. 1447, 131 L.Ed.2d 328, the Alabama Supreme Court found a state separation of powers violation only insofar as the lower courts readjudicated paternity under a statute not in effect when the prior final judgment was obtained. A majority of the court in Jenkins, supra, 723 So.2d 649, held that the more liberal terms of the 1994 statute could not be applied "retroactively to change the reopening provisions incorporated into paternity judgments that became final before that section was enacted." (Jenkins, at p. 656 (lead opn. of See, J.); see id. at p. 664 (cone. & dis. opn. of Almon, J.); id. at p. 665 (cone. & dis. opn. of Kennedy, J.).) However, the court rejected any suggestion that the Legislature lacked power to change "the law of finality" prospectively (id. at p. 658 (lead opn. of *211 See, J.)), by subjecting judgments to a reopening provision in existence when they otherwise achieved conclusive effect. (Id. at pp. 658-660 (lead opn. of See, J.); see id. at pp. 661-664 (cone. & dis. opn. of Maddox, J.); id. at pp. 669-678 (cone. & dis. opn. of Cook, J.).) The Alabama Supreme Court ultimately reversed and remanded the matter to determine whether the ex-husband was entitled to relitigate paternity under the 1986 statute, as incorporated into the prior judgment, including the "reasonable time" restriction contained only in that law.
We therefore hold that a refiling provision like section 803(g) cannot be retroactively applied to subvert judgments that became final before the provision took effect, and before the law of finality changed. This ban applies even where lawmakers have acted for "the very best of reasons" (Plaut, supra, 514 U.S. 211, 228, 115 S.Ct. 1447, 131 L.Ed.2d 328, italics omitted), and whether or not legislative disagreement with the "legal rule" underlying the judgment has been expressed (id. at p. 230, 115 S.Ct. 1447). By the same token, a judgment is not final for separation of powers purposes, and reopening of the case can occur, under the specific terms of refiling legislation already in effect when the judicial branch completed its review and ultimately decided the case. Such nonretroactive limitations on judgment finality are constitutionally allowed.[15]
*212 We have seen that since it was first amended in 1996, section 803(g) has continuously offered the People a new opportunity to prosecute child sex crimes that were previously charged under prior versions of the statute but dismissed by the courts. Both the 1996 and 1997 laws authorize the "refiling" and "revival" of otherwise time-barred counts. However, the precise conditions under which prosecutors may refile depend upon which version of section 803(g) is involved. For example, the 1996 law required, among other things, the refiling of complaints "on or before June 30, 1997." (Former § 803(g)(3)(B)(ii) (1996 version).) The 1997 lawin addition to other changes and conditionsextends the refiling period to a point "no later than 180 days after" finality of an authoritative high court decision upholding retroactive application of the statute, namely, Frazer, supra, 21 Cal.4th 737, 88 Cal.Rptr.2d 312, 982 P.2d 180. (§ 803(g)(3)(A)(iv).)
To the extent neither the 1996 nor the 1997 refiling provision was in effect when a prior judgment of dismissal under section 803(g) became final within the meaning of Plaut, supra, 514 U.S. 211, 227, 234, 115 S.Ct. 1447, 131 L.Ed.2d 328, the state separation of powers doctrine bars reliance on either provision to recharge a molestation defendant with the same crimes. Such a scenario is indistinguishable from the circumstances that gave rise to a separation of powers violation in Plaut itself.
Constitutional problems also arise where the prior dismissal was entered or finally upheld when one version of section 803(g) was in effect (e.g., the 1996 refiling provision), but the reinstituted complaint complies only with a later version (e.g., the 1997 refiling provision) which became effective after the prior dismissal was entered or finally upheld. In that circumstance, use of the later law constitutes an impermissible retroactive attack on a judgment constitutionally subject to reopening only under the earlier law. (Cf. Jenkins, supra, 723 So.2d 649, 655-658 (lead opn. of See, J.).) It is on this basis that we disallow reprosecution of the defendant in the companion case of King, supra, 27 Cal.4th 29, 115 Cal.Rptr.2d 214, 37 P.3d 398.
In the present case, the pertinent facts are materially distinct from those in King, and we therefore reach the opposite result. Dismissal of the 1995 complaint against defendant Bunn did not become final for constitutional purposes until judicial review in Bunn I, supra, 53 Cal.App.4th 227, 61 Cal.Rptr.2d 734, was complete. Both in February 1997, when the decision in Bunn I was filed, and in May 1997, when review in Bunn I was denied, the 1996 version of section 803(g) was in effect, including the refiling provision contained in former section 803(g)(3)(B)(ii) (1996 version).
The 1997 complaint now challenged by defendant satisfies all requirements of former section 803(g)(3)(B)(ii) (1996 version), as follows: (1) the victim reported the crimes to law enforcement officials "between January 1, 1994, and January 1, 1997," (2) the 1995 complaint was filed within one year of the report "but was dismissed," and (3) the same crimes were recharged as part of the 1997 complaint "on ... June 30, 1997." (Ibid.) Because the 1996 law permits refiling under these statutory conditions, and because these conditions were incorporated into the judgment when it otherwise became final in Bunn I, supra, 53 Cal.App.4th 227, 61 Cal.Rptr.2d 734, prosecutorial use of the 1996 refiling provision does not retroactively *213 reopen the case or violate the constitutional rules we have discussed. (Plaut, supra, 514 U.S. 211, 234, 115 S.Ct. 1447, 131 L.Ed.2d 328; cf. Jenkins, supra, 723 So.2d 649, 658-660 (lead opn. of See, J.).)[16]
Accordingly, the correct result was reached on appeal in the present case. On the one hand, the Court of Appeal failed to consider either the concept of judgment finality in Plaut, supra, 514 U.S. 211, 115 S.Ct. 1447, 131 L.Ed.2d 328, or the effect of the 1996 refiling provision on defendant's separation of powers claim. On the other hand, the Court of Appeal properly allowed reinstatement of the six molestation counts dismissed in Bunn I, supra, 53 Cal.App.4th 227, 61 Cal.Rptr.2d 734, and properly declined to uphold the superior court's dismissal of the information on separation of powers grounds.[17]

III. Disposition
The judgment of the Court of Appeal is affirmed.
WE CONCUR: GEORGE, C.J., KENNARD, WERDEGAR, CHIN, and MORENO, JJ.
Concurring Opinion by BROWN, J.
I concur in the judgment under compulsion of People v. Frazer (1999) 21 Cal.4th 737, 88 Cal.Rptr.2d 312, 982 P.2d 180 (see id. at pp. 782-784, 88 Cal.Rptr.2d 312, 982 P.2d 180 (dis. opn. of Brown, J.)) and Plaut *214 v. Spendthrift Farm, Inc. (1995) 514 U.S. 211, 115 S.Ct. 1447, 131 L.Ed.2d 328.
NOTES
[1] All further unlabeled statutory references are to the Penal Code.
[2] Article III, section 3 of the California Constitution states: "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution."
[3] The 1994 version of section 803(g) provided as follows:

"Notwithstanding any other limitation of time described in this section, a criminal complaint may be filed within one year of the date of a report to a law enforcement agency by a person of any age alleging that he or she, while under the age of 18 years, was the victim of a crime described in Section 261 [rape], 286 [sodomy], 288 [lewd conduct], 288a [oral copulation], 288.5 [continuous sexual abuse], 289 [sexual penetration by foreign object], or 289.5 [fleeing sex offender]. This subdivision shall apply only if both of the following occur:
"(1) The limitation period specified in Section 800 or 801 has expired.
"(2) The crime involved substantial sexual conduct, as described in subdivision (b) of Section 1203.066, excluding masturbation which is not mutual, and there is independent evidence that clearly and convincingly corroborates the victim's allegation. No evidence may be used to corroborate the victim's allegation which would otherwise be inadmissible during trial. Independent evidence shall not include the opinions of mental health professionals."
[4] E.g., People v. King (Cal.App.), review granted December 11, 1996, S056411, on April 24, 1997, review dismissed in light of intervening amendments to section 803(g); People v. Sowers (Cal.App.), review granted March 14, 1996, S051278, on April 24, 1997, review dismissed in light of intervening amendments to section 803(g); People v. Regules (Cal. App.), review granted November 16, 1995, S048880, on April 24, 1997, review dismissed in light of intervening amendments to section 803(g); People v. Richard G. (Cal.App.), review granted September 14, 1995, S047826, on April 24, 1997, review dismissed in light of intervening amendments to section 803(g).
[5] Lynch v. Superior Court (1995) 33 Cal. App.4th 1223, 39 Cal.Rptr.2d 414 (Lynch I).
[6] People v. Maloy (Cal.App.), review granted November 22, 1995, S049313, on April 24, 1997, review dismissed in light of intervening amendments to section 803(g).
[7] The 1996 version of section 803(g) provided as follows:

"(1) Notwithstanding any other limitation of time described in this chapter, a criminal complaint may be filed within one year of the date of a report to a law enforcement agency by a person of any age alleging that he or she, while under the age of 18 years, was the victim of a crime described in Section 261, 286, 288, 288a, 288.5, 289, or 289.5.
"(2) This subdivision applies only if both of the following occur:
"(A) The limitation period specified in Section 800 or 801 has expired.
"(B) The crime involved substantial sexual conduct, as described in subdivision (b) of Section 1203.066, excluding masturbation that is not mutual, and there is independent evidence that clearly and convincingly corroborates the victim's allegation. No evidence may be used to corroborate the victim's allegation that otherwise would be inadmissible during trial. Independent evidence does not include the opinions of mental health professionals.
"(3)(A) Effective July 1, 1997, this subdivision applies to a cause of action arising before, on, or after January 1, 1994, the effective date of this subdivision, and if the complaint is filed within the time period specified in this subdivision, it shall revive any cause of action barred by Section 800 or 801.
"(B) Effective January 1, 1997, through June 30, 1997, this subdivision applies to a cause of action arising before, on, or after January 1, 1994, the effective date of this subdivision, and it shall revive any cause of action barred by Section 800 or 801 if either of the following occurs:
"(i) The complaint is filed within the time period specified in this subdivision.
"(ii) The victim made the report required by this subdivision to a law enforcement agency between January 1, 1994, and January 1, 1997, and a complaint was not filed within the time period specified in this subdivision or was filed within the time period but was dismissed, but a complaint is filed or refiled on or before June 30, 1997."
[8] The 1997 version of section 803(g) provides as follows:

"(1) Notwithstanding any other limitation of time described in this chapter, a criminal complaint may be filed within one year of the date of a report to a California law enforcement agency by a person of any age alleging that he or she, while under the age of 18 years, was the victim of a crime described in Section 261, 286, 288, 288a, 288.5, 289, or 289.5.
"(2) This subdivision applies only if both of the following occur:
"(A) The limitation period specified in Section 800 or 801 has expired.
"(B) The crime involved substantial sexual conduct, as described in subdivision (b) of Section 1203.066, excluding masturbation that is not mutual, and there is independent evidence that clearly and convincingly corroborates the victim's allegation. No evidence may be used to corroborate the victim's allegation that otherwise would be inadmissible during trial. Independent evidence does not include the opinions of mental health professionals.
"(3)(A) This subdivision applies to a cause of action arising before, on, or after January 1, 1994, the effective date of this subdivision, and it shall revive any cause of action barred by Section 800 or 801 if any of the following occurred or occurs:
"(i) The complaint or indictment was filed on or before January 1, 1997, and it was filed within the time period specified in this subdivision.
"(ii) The complaint or indictment is or was filed subsequent to January 1, 1997, and it is or was filed within the time period specified within this subdivision.
"(iii) The victim made the report required by this subdivision to a law enforcement agency after January 1, 1994, and a complaint or indictment was not filed within the time period specified in this subdivision, but a complaint or indictment is filed no later than 180 days after the date on which either a published opinion of the California Supreme Court, deciding the question of whether retroactive application of this subdivision is constitutional, becomes final or the United States Supreme Court files an opinion deciding the question of whether retroactive application of this subdivision is constitutional, whichever occurs first.
"(iv) The victim made the report required by this subdivision to a law enforcement agency after January 1, 1994, and a complaint or indictment was filed within the time period specified in this subdivision, but the indictment, complaint, or subsequently filed information was dismissed, but a new complaint or indictment is filed no later than 180 days after the date on which either a published opinion of the California Supreme Court, deciding the question of whether retroactive application of this subdivision is constitutional, becomes final or the United States Supreme Court files an opinion deciding the question of whether retroactive application of this subdivision is constitutional, whichever occurs first.
"(B)(i) If the victim made the report required by this subdivision to a law enforcement agency after January 1, 1994, and a complaint or indictment was filed within the time period specified in this subdivision, but the indictment, complaint, or subsequently filed information was dismissed, a new complaint or indictment may be filed notwithstanding any other provision of law, including, but not limited to, subdivision (c) of Section 871.5 and subdivision (b) of Section 1238.
"(ii) An order dismissing an action filed under this subdivision, which is entered or becomes effective at any time prior to 180 days after the date on which either a published opinion of the California Supreme Court, deciding the question of whether retroactive application of this section is constitutional, becomes final or the United States Supreme Court files an opinion deciding the question of whether retroactive application of this subdivision is constitutional, whichever occurs first, shall not be considered an order terminating an action within the meaning of Section 1387.
"(iii) Any ruling regarding the retroactivity of this subdivision or its constitutionality made in the course of the previous proceeding, by any trial court or any intermediate appellate court, shall not be binding upon refiling."
[9] As an urgency measure, the 1997 law expressly provided that it became effective "immediately" upon enactment. (Stats.1997, ch. 29, § 2; see Cal. Const, art. IV, § 8, subd. (c), par. (3); Gov.Code, § 9600, subd. (b).) Such enactment occurred on June 30, 1997, when the bill (Assem. Bill No. 700 (1997-1998 Reg. Sess.)), which had previously been passed by the Legislature, was first approved by the Governor and then filed with the Secretary of State. (See Gov.Code, § 9510; In re Thierry S. (1977) 19 Cal.3d 727, 738-739, 139 Cal.Rptr. 708, 566 P.2d 610.) The legislative history does not reveal the precise time of day at which the latter events took place. (Cf. People v. Cargill (1995) 38 Cal.App.4th 1551, 1554-1555, 45 Cal.Rptr.2d 480 [holding that because new urgency penal legislation was filed with the Secretary of State at 2:45 p.m. on the date of enactment, it was in effect and governed the defendant's crime, which occurred at 10:15 p.m. the same day].)
[10] Frazer, supra, 21 Cal.4th 737, 765-772, 88 Cal.Rptr.2d 312, 982 P.2d 180, held that section 803(g) deprives defendants who acquired a statute of limitations defense before January 1, 1994, of no "fundamental" constitutional interest, and that such a defense therefore can be retroactively withdrawn consistent with federal and state substantive due process guarantees. Frazer relied heavily upon Chase Securities Corp. v. Donaldson (1945) 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628 (Chase), which reached a similar conclusion with respect to civil statutes of limitation. Nor, according to Frazer, is section 803(g) "arbitrary" or "capricious" insofar as it retroactively revives time-barred claims to permit prosecutions based on delayed reporting by the victims of child sexual abuse. (Frazer, supra, 21 Cal.4th at p. 773, 88 Cal. Rptr.2d 312, 982 P.2d 180.) Frazer also declined to invalidate section 803(g) on the ground it facially offends procedural due process rights under either the federal or state Constitutions. To the extent the defendant in Frazer claimed his ability to refute the charges had been impaired by the passage of time, this fact-based claim was deemed not "`ripe for adjudication.'" (Frazer, supra, 21 Cal.4th at p. 775, 88 Cal. Rptr.2d 312, 982 P.2d 180, quoting United States v. Lovasco (1977) 431 U.S. 783, 789, 97 S.Ct. 2044, 52 L.Ed.2d 752.)
[11] As amended, the 1997 complaint alleged, among other things, that the victim's accusations were independently corroborated by "the statement of the defendant wherein he admits to committing these acts." This allegation evidently refers to police reports, attached for the first time to the 1997 complaint, disclosing that defendant voluntarily told arresting officers in 1995 that he and his daughter had sexual intercourse about 30 times when she was age 15, and that they engaged in oral copulation on two occasions. The same materials also report that defendant denied using force against his daughter and claimed she always consented to sex.
[12] In the course of this discussion, the high court acknowledged that both the existence and length of any statute of limitations is "entirely subject to congressional control." (Plaut, supra, 514 U.S. 21], 228, 115 S.Ct. 1447, 131 L.Ed.2d 328.) The court also reaffirmed its earlier holding in Chase, supra, 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628, that a statute of limitations defense can be withdrawn after it is acquired consistent with due process guarantees. (Plaut, supra, 514 U.S. at p. 229, 115 S.Ct. 1447.) Plaut made clear, however, that Congress's retroactive alteration of a limitations period cannot have the effect of reinstating an action reduced to final judgment on that ground before the law changed. In particular, Plant declined to reach a contrary conclusion based on the general malleability of statutes of limitation, noting that Congress could otherwise authorize the "massive" undoing of final judgments by retroactively changing any rule subject to its control, and could thereby "substantially subvert" the separation of powers doctrine. (Ibid.) Thus, under Plaut, "[t]o distinguish statutes of limitations on the ground that they are mere creatures of Congress is to distinguish them not at all." (Ibid.)
[13] Plaut found "no [other] instance in which Congress has attempted to set aside the final judgment of an Article III court by retroactive legislation." (Plaut, supra, 514 U.S. 211, 230, 115 S.Ct. 1447, 131 L.Ed.2d 328; see id. at pp. 234, 240, 115 S.Ct. 1447.) The high court also rejected any suggestion that its holding departed from existing law. Thus, Plaut distinguished United States v. Sioux Nation (1980) 448 U.S. 371, 100 S.Ct. 2716, 65 L.Ed.2d 844, which upheld, on separation of powers grounds, a statute directing the federal Court of Claims to decide whether the government owed just compensation for taking tribal land 200 years earlier, notwithstanding any res judicata defense and even though the same court had previously rejected the same claim. Congressional waiver in Sioux Nation of the res judicata benefit of a decision acquired by the government in prior litigation was notaccording to Plaut, supra. 514 U.S. at pages 230-231, 115 S.Ct. 1447a direct attack on the underlying independence and power of the judiciary.
[14] We reject, for instance, the People's attempt to distinguish the federal statute in Plaut, supra, 514 U.S. 211, 115 S.Ct. 1447, 131 L.Ed.2d 328, from section 803(g). The People observe that Plaut condemned section 27A of the SEC Act insofar as it embodied a retroactive reopening "require[ment]" (514 U.S. at pp. 213, 217, 240, 115 S.Ct. 1447), or "command[ ]" (id. at pp. 216, fn. 2, 219, 115 S.Ct. 1447). The high court's terminology reflected the language of section 27A itself, which stated that actions dismissed before the statute's effective date "`shall be reinstated on motion by the plaintiff.'" (514 U.S. at p. 215, 115 S.Ct. 1447, italics added.) The People suggest that section 803(g)'s refiling provisions do not fall within Plant's constitutional analysis because they merely "permit," rather than mandate, the reinstatement of previously dismissed actions. However, as our discussion of the state statutory scheme makes clear, there is no functional difference between the Plaut statute, which explicitly requires reinstatement upon the plaintiff's motion, and section 803(g), which implicitly requires reinstatement upon a qualified refiling by the People. In both cases, the final judgment must be reopened upon appropriate statutory action taken by the party against whom the prior action was dismissed. Plaut held that retroactive application of such a statute violates separation of powers principles at the federal level, and we reach a similar conclusion under the state Constitution.
[15] Defendant suggests that no statute, regardless of when it was enacted and whether it affects past or only future judgments, may allow the refiling of dismissed actions where the Legislature seeks to review, control, or disapprove the "outcome" reached by the courts in resolving "the merits" of specific disputes. To the extent such a distinct separation of powers theory finds support in California law, we decline to apply it here. (Cf. Mandel, supra, 29 Cal.3d 531, 545-551, 174 Cal.Rptr. 841, 629 P.2d 935.) Nothing in the 1996 or 1997 versions of section 803(g) suggests that refiling is permitted because courts misinterpreted or misapplied the law as it then existed when prior dismissals occurred. Nor do the 1996 and 1997 laws purport to dictate the manner in which courts should dispose of refiled counts. Both the 1996 and 1997 laws simply allow prosecution under current law of previously dismissed cases on exactly the same terms as cases that were never previously prosecuted. (Compare former § 803(g)(3)(B)(ii) (1996 version) with § 803(g)(3)(A)(iii) & (iv).) Thus, as indicated above, the purpose and effect of the 1996 and 1997 refiling provisions were merely to ensure that defendants who were diligently prosecuted under earlier versions of the statute, but who won dismissals in those cases, are not thereafter uniquely exempt from prosecution under more recent law, and do not receive more favorable statute of limitations treatment than other similarly situated defendants against whom no previous prosecutions had been attempted. (See Sen. Com. on Public Safety, Analysis of Assem. Bill No. 700 (1997-1998 Reg. Sess.) as amended June 3, 1997, p. 5 [noting that the 1997 refiling provision helps extend section 803(g) to "all cases" charging the enumerated crimes].) Viewed in this manner, section 803(g) is no different, for separation of powers purposes, from the many other statutes that authorize the refiling of previously dismissed criminal counts, and that have long been part of California law. (E.g., §§ 999 [enacted in 1872], 1010 [same], 1387, subd. (a) [same], 1387.1, subd. (a) [added by Stats.1987, ch. 1211, § 47.5 pp. 4328-4329].) To characterize section 803(g)'s refiling provisions as an impermissible attempt to readjudicate the "merits" of prior dismissals, or to otherwise conclude that such provisions impermissibly impair the "finality" of even future judgments, would raise a serious question as to the constitutionality of all criminal refiling statutes. Of course, Plaut itself casts doubt on whether the effect of a refiling statute on the "merits" of judicial determinations is a critical, or even relevant, separation of powers concern. Plaut seems to establish a bright-line rule that considers only whether statutory limitations on finality were, or were not, in existence when the judgment otherwise achieved conclusive effect. (Plaut, supra, 514 U.S. at p. 228, 115 S.Ct. 1447 [prohibiting retroactive reopening statutes regardless of their underlying "reasons"], 230 [indicating that judgments are entitled to constitutional protection regardless of the underlying "legal rule"].)
[16] It is clear that defendant's prosecution complies with the 1996 refiling provision in effect when the judgment in Bunn I, supra, 53 Cal.App.4th 227, 61 Cal.Rptr.2d 734, became final for constitutional purposes under Plaut, supra, 514 U.S. 211, 227, 234, 115 S.Ct. 1447, 131 L.Ed.2d 328. (See former § 803(g)(3)(B)(ii) (1996 version).) However, as a hypertechnical matter of state statutory law, we cannot eliminate the possibility that, at the precise moment the complaint was refiled on June 30, 1997 (a fact not disclosed by the record), the 1996 version of section 803(g) had been supplantedseconds, minutes, or hours short of its originally devised expirationby the 1997 version (a fact not disclosed by the legislative history). Of course, as reflected in the amended complaint filed on July 17, 1997, the instant prosecution satisfies the more generous terms of the 1997 refiling provision as well. (See § 803(g)(3)(A)(iv).) In any event, this hypothetical anomaly is irrelevant to our separation of powers analysis. Insofar as the refiled complaint satisfies all statutory limitations on finality of the judgment in Bunn I, supra, 53 Cal.App.4th 227, 61 Cal.Rptr.2d 734, which were in effect when finality occurred, the instant refiled prosecution is not the result of any retroactive statutory assault upon the judgment in Bunn I.
[17] We do reject any suggestion by the instant Court of Appeal that Lynch II, supra, 69 Cal. App.4th 313, 81 Cal.Rptr.2d 552, was wrongly decided under its own facts. On appeal in Lynch I, supra, 33 Cal.App.4th 1223, 1228-1229, 39 Cal.Rptr.2d 414, the defendant obtained the dismissal of charges brought under the 1994 version of section 803(g). This court denied review in Lynch I on May 25, 1995, while the 1994 law was still in effect. (Lynch I, supra, 33 Cal.App.4th at p. 1229, 39 Cal. Rptr.2d 414.) On July 1, 1997, the day after enactment of the 1997 law, a complaint was filed in Lynch II, supra, 69 Cal.App.4th 313, 317, 81 Cal.Rptr.2d 552, reinstating the dismissed counts. In upholding the trial court's dismissal of the refiled complaint, the Court of Appeal held in Lynch II that use of the 1997 refiling provision would constitute an impermissible legislative effort "to readjudicate a controversy that has been litigated in our courts and resolved by a final judicial judgment." (Id. at p. 315, 81 Cal.Rptr.2d 552.) While the court's reasoning does not strictly conform to the analysis we adopt here today, including our reliance on Plaut, supra, 514 U.S. 211, 115 S.Ct. 1447, 131 L.Ed.2d 328, the result in Lynch II is correct. Neither the 1996 nor the 1997 refiling provision existed when the judgment in Lynch I, supra, 33 Cal.App.4th 1223, 39 Cal.Rptr.2d 414, became final. Hence, no version of section 803(g) could constitutionally be applied to reinstate the complaint in Lynch II, supra, 69 Cal.App.4th 313, 81 Cal.Rptr.2d 552.