Filed 9/4/20  P. v. Newsome CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E073206 |
| v. | (Super.Ct.No. RCR16650) |
| MALVARN NEWSOME, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Jon D. Ferguson, Judge.  Reversed.

Mary Woodward Wells, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Thomas S. Patterson, Chief Assistant Attorney General, Tamar Pachter, Assistant Attorney General, Nelson R. Richards, Deputy Attorney General, as Amicus Curiae for Defendant and Appellant.

1

Jason Anderson, District Attorney, James Secord, Deputy District Attorney, for Plaintiff and Respondent.

Effective January 1, 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) amended Penal Code[1] sections 188 and 189 (Stats. 2018, ch. 1015, §§ 2, 3) to limit the application of the felony-murder rule and the crime of murder under the natural and probable consequences doctrine to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill or was not a major participant in the underlying felony who acted with reckless indifference to human life.  In addition, Senate Bill No. 1437 enacted section 1170.95, which permits persons previously convicted of first or second degree murder under the felony-murder rule or the natural and probable consequences doctrine, but who could not be so convicted under the amendments enacted by Senate Bill No. 1437, to petition the superior court to vacate their murder convictions and to resentence them on any remaining counts.

Defendant and appellant Malvarn Newsome[2] appeals an order striking his section 1170.95 petition, seeking reversal and remand for the trial court to review his petition on the merits.  A trial court struck his petition, concluding that Senate Bill No. 1437 is unconstitutional since it invalidly amended Proposition 7, a voter initiative that increased the punishments for persons convicted of murder (Prop. 7, as approved by voters, Gen.

---

[1] All further statutory references will be to the Penal Code unless otherwise noted.

[2] We note that the appellate briefs and other documents spell defendant's name "Malvern."  However, the majority of the documents contained in the record, including the notice of appeal filed by defendant, spell his name "Malvarn."

Elec. (Nov. 7, 1978) (Proposition 7)) and Proposition 115, a voter initiative that augmented the list of predicate offenses for first degree felony-murder liability (Prop. 115, as approved by voters, Primary Elec. (June 5, 1990) (Proposition 115)). The People[3] urge us to affirm the denial order on the grounds that: (1) Senate Bill No. 1437 invalidly amended Proposition 7; (2) Senate Bill No. 1437 invalidly amended Proposition 115; (3) the resentencing provision violates the separation of powers doctrine; and/or (4) the resentencing provision deprives crime victims the rights afforded them by the Victims' Bill of Rights Act of 2008, commonly known as Marsy's Law (Prop. 9, as approved by voters, Gen. Elec. (Nov. 4, 2008) (Proposition 9)). We agree with defendant that Senate Bill No. 1437 is constitutional, and he is entitled to have the trial court consider his petition. We will therefore reverse the judgment and remand the case for further proceedings called for by section 1170.95.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 26, 1989, defendant and his cohort were waiting by some apartments for a car to drive up so they could take it by force. Defendant chose a car that pulled up, and his cohort approached the driver while defendant hid by a trash bin. The robbery was botched when the gun in his cohort's hand discharged, and the driver died. The district attorney filed an information charging defendant with first degree murder (§ 187, count 1) and attempted robbery (§§ 664, 211, count 2), alleging that a principal

---

[3] The San Bernardino County District Attorney (the district attorney) is the respondent in this case.

was armed with a firearm during the commission of both counts (former § 12022, subd. (a)). A jury found defendant guilty of both counts, and the court found the firearm allegations true. The court then sentenced him to state prison for 26 years to life.

Defendant appealed, and this court affirmed the judgment. (*People v. Newsome* (May 18, 1993, E009783) [nonpub. opn.].)

On January 22, 2019, defendant filed a petition for resentencing under section 1170.95, alleging that he was convicted of first or second degree murder pursuant to the felony-murder rule or the natural and probable consequences doctrine, and that he could not now be convicted of first or second degree murder because of the amendments to sections 188 and 189. He requested the court to appoint counsel for him. The district attorney moved to strike defendant's petition, arguing that Senate Bill No. 1437 is unconstitutional because it unlawfully amended Proposition 7 and Proposition 115, violated the separation of powers doctrine, and conflicted with the Victims' Bill of Rights Act of 2008. The trial court appointed a public defender to represent defendant, and counsel filed an opposition to the motion to strike, arguing Senate Bill No. 1437 is constitutional.

On June 18, 2019, the court held a hearing on the petition. It found defendant stated a prima facie case, in that he was convicted under a felony-murder theory. The court noted he alleged he was not the actual shooter, but aided and abetted in the robbery, during which the victim was killed. However, it concluded section 1170.95 invalidly amended Proposition 7 and Proposition 115 and granted the petition to strike on that

basis, without addressing the district attorney's remaining arguments. In pertinent part, the court reasoned as follows: "Prop[osition] 7 added Section 190 to the Penal Code, which increased the penalties for first and second degree murder to 25 to life, and 15 years to life, respectively. The electorate is deemed to be aware of the laws in effect at the time they enact new laws, which in this case would include the definitions and elements of first and second degree murder. [¶] In this Court's opinion, it would not be a reasonable interpretation to suggest that Penal Code Section 190 was implemented to apply to some fluid and evolving type of conduct, so long as it was simply called 'first or second degree murder.' [¶] Because [Senate Bill No.] 1437 prohibits punishment for conduct that was authorized by Prop[osition] 7, it must be deemed unconstitutional."

The court further stated, "[I]n this Court's opinion, [Senate Bill No.] 1437 prohibits what Prop[osition] 115 authorized. Specifically, it reduces the type of conduct subject to punishment under Penal Code Section 189. It also requires elements for first degree murder as an aider and abettor that Prop[osition] 115 reserved for special circumstances liability. [¶] As such, in this Court's view, SB1437 must be deemed unconstitutional, as—under Prop[osition] 115, as it was not passed by a two-thirds majority in each legislative house."

Defendant filed a timely notice of appeal.

DISCUSSION

A. *Statutory Background*

1. *Proposition 7*

Proposition 7, known as the Death Penalty Act, increased the penalties for offenders convicted of first and second degree murder. The voters approved those changes on November 7, 1978.

Before Proposition 7, section 190 punished offenders convicted of first degree murder by "death, confinement in state prison for life without possibility of parole, or confinement in state prison for life" and second degree murder "by imprisonment in the state prison for five, six, or seven years."[4] (Ballot Pamp., Gen. Elec. (Nov. 7, 1978) (1978 Ballot Pamphlet) text of Prop. 7, § 1, p. 33.) As the 1978 Ballot Pamphlet pointed out, at that time, a person who received the minimum sentence for first degree murder would be eligible for parole after serving only seven years, and, due to good behavior credits, a person sentenced to a mid-term six years for second degree murder could be eligible for parole after serving only four years. (*Id.*, Legis. Analyst, analysis of Prop. 7, p. 32.)

Proposition 7 increased the penalties for both first and second degree murder. It amended section 190 to increase the minimum sentence for first degree murder to a term

---

[4] We grant the district attorney's motion asking us to take judicial notice of the ballot pamphlets for Propositions 7 and 115 and certain legislative history related to Senate Bill No. 1437. (Evid. Code, §§ 450, 452, 453.) We need not take judicial notice of our prior opinion in defendant's case or the Legislative Counsel Bureau opinion letter dated March 12, 2018, as requested, since they are both contained in the record.

6

of 25 years to life.  (1978 Ballot Pamp., *supra*, Legis. Analyst, analysis of Prop. 7, p. 32; text of Prop. 7, § 2, p. 33.)  It also increased the sentence for second degree murder in all cases to 15 years to life.  (*Ibid.*; see *People v. Cooper* (2002) 27 Cal.4th 38, 42 (*Cooper*).)

Not relevant here, other provisions of Proposition 7 addressed the imposition of the death penalty, including by expanding the list of special circumstances making an offense death-eligible and revising the law relating to mitigating or aggravating circumstances for death-eligible offenses.  (1978 Ballot Pamp., *supra*, Legis. Analyst, analysis of Prop. 7, p. 32.)  Section 190.1 set phases for death penalty cases.  Section 190.2 set the special circumstances under which a person convicted of first degree murder could be punished by death or life without parole.  Section 190.3 set the procedure for imposing the death penalty on offenders convicted of special-circumstance first degree murder.  Section 190.4 set the procedure for determining whether a murder included a special circumstance.  Finally, section 190.5 made offenders younger than 18 years old ineligible for the death penalty.  (1978 Ballot Pamp., text of Prop. 7, §§ 4 at p. 33, 6 at p. 42, 8 at p. 43, 10 at p. 45, 12 at p. 46.)

Proposition 7 did not include a provision authorizing the Legislature to amend its provisions without voter approval.  (See 1978 Ballot Pamp., *supra*, text of Prop. 7, §§ 1-12, pp. 33, 41-46; *Cooper*, *supra*, 27 Cal.4th at p. 44.)

2.  *Proposition 115*

Twelve years later, the voters passed Proposition 115, known as the Crime Victims Justice Reform Act, which amended the California Constitution to make several

7

changes to procedures and rights applicable in criminal cases. (Prop. 115, as approved by voters, Primary Elec. (June 5, 1990).)

The proposal indicated the amendment was a response to "decisions and statutes [that] have unnecessarily expanded the rights of accused criminals far beyond that which is required by the United States Constitution, thereby unnecessarily adding to the costs of criminal cases, and diverting the judicial process from its function as a quest for truth." (Ballot Pamp., Prim. Elec. (June 5, 1990) (1990 Ballot Pamphlet) text of Prop. 115, pp. 33, 65-69.) Among its core provisions, the initiative attempted to bar the courts from construing the California Constitution as affording to criminal defendants greater rights than the United States Constitution affords. However, the California Supreme Court concluded such a significant revision to the constitutional dispersal of government power must be passed at a constitutional convention or by initiative initially proposed by the Legislature. (*Raven v. Deukmejian* (1990) 52 Cal.3d 336, 349-350.)

The initiative also changed the rules regarding criminal discovery, prohibited postindictment preliminary hearings, established the People's right to due process and speedy criminal trials, and allowed hearsay in preliminary hearings. (1990 Ballot Pamp., *supra*, text of Prop. 115, pp. 33, 65-69; see *Raven v. Deukmejian*, *supra*, 52 Cal.3d at p. 342 [summarizing Proposition 115].)

Relevant to this case, the initiative amended sections 189 and 190.2. Previously, section 189 defined as first degree murder any killing "committed in the perpetration of, or attempt to perpetrate, arson, rape, robbery, burglary, mayhem, or any act punishable

8

under Section 288 [lewd and lascivious conduct]." The initiative expanded its definition of first degree murder by adding killings that occurred during the commission of kidnapping, train wrecking, and various additional sex offenses. (1990 Ballot Pamp., *supra*, text of Prop. 115, § 9, p. 66.) The initiative amended section 190.2 to require a sentence of death or life without the possibility of parole in two situations where the offender is not the actual killer—when they aid or support a killer and act with the intent to kill and when they are a major participant in certain crimes (like robbery) where a death occurs, and act with reckless indifference to human life. (1990 Ballot Pamp., *supra*, text of Prop. 115, § 10, p. 66.)

Proposition 115 permitted the Legislature to amend its terms by a two-thirds vote in each house of the Legislature. (1990 Ballot Pamp., *supra*, text of Prop. 115, § 30, p. 69.)

### 3. *Senate Bill No. 1437*

Generally, malice is an essential element of the crime of murder. (§ 187.) Malice may be either express or implied. It is express "when there is manifested a deliberate intention to unlawfully take away the life of a fellow creature." (§ 188, subd. (a)(1).) It is implied "when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." (*Id*., subd. (a)(2).) Implied malice has " 'both a physical and a mental component. The physical component is satisfied by the performance of "an act, the natural consequences of which are dangerous to life." [Citation.] The mental component is the requirement that the

9

defendant "knows that his conduct endangers the life of another and . . . acts with a conscious disregard for life." ' " (*People v. Chun* (2009) 45 Cal.4th 1172, 1181 (*Chun*).)

Before Senate Bill No. 1437, the felony-murder rule and the natural and probable consequences doctrine were exceptions to the actual malice requirement. The felony-murder rule made "a killing while committing certain felonies murder without the necessity of further examining the defendant's mental state." (*Chun*, *supra*, 45 Cal.4th at p. 1182.) First degree felony murder was "a killing during the course of a felony specified in section 189, such as rape, burglary, or robbery." (*Ibid.*) Second degree felony murder was " 'an unlawful killing in the course of the commission of a felony that is inherently dangerous to human life but is not included among the felonies enumerated in section 189.' " (*Ibid*.) The natural and probable consequences doctrine made "a person who aids and abets a confederate in the commission of a criminal act . . . liable not only for that crime (the target crime), but also for any other offense (nontarget crime) [including murder] committed by the confederate as a 'natural and probable consequence' of the crime originally aided and abetted." (*People v. Prettyman* (1996) 14 Cal.4th 248, 254 & 262-263, superseded by statute as stated in *People v. Lopez* (2019) 38 Cal.App.5th 1087, 1103.) Because a nontarget murder " 'is unintended, the mens rea of the aider and abettor with respect to that offense is irrelevant and culpability is imposed simply because a reasonable person could have foreseen the commission of the [murder].' " (*People v. Chiu* (2014) 59 Cal.4th 155, 164 (*Chiu*).) For that reason, our Supreme Court held "punishment for second degree murder," rather than first degree

murder, "is commensurate with a defendant's culpability for aiding and abetting a target crime that would naturally, probably, and foreseeably result in a murder under the natural and probable consequences doctrine."[5] (*Id.* at p. 166.)

In 2018, the Legislature adopted, and the Governor signed Senate Bill No. 1437. In an uncodified section of the law, the Legislature declared it found that "[r]eform is needed in California to limit convictions and subsequent sentencing so that the law of California fairly addresses the culpability of the individual." (*Id.* at § 1.) The new law was designed "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (*Ibid.*)

In effect, Senate Bill No. 1437 is a change to the substantive offense of first and second degree murder, removing the exceptions that had allowed such convictions despite the absence of malice. Effective January 1, 2019, Senate Bill No. 1437 made that change by amending sections 188 and 189 to restrict the scope of first degree felony murder and eliminate second degree murder based on the natural and probable consequences doctrine. (Sen. Bill No. 1437, §§ 2-3.) As amended, section 188 directs malice may not "be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) Instead, "to be convicted of murder, a principal in a crime shall act with malice," except for cases applying the narrowed felony-murder rule in new

---

[5] We note that an offender may be convicted of first degree murder based on direct aiding and abetting principles or under the felony-murder rule. (*Chiu, supra*, 59 Cal.4th at p. 167.)

subdivision (e) of section 189, under which "[a] participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder *only if* one of the following is proven:  [¶] (1) The person was the actual killer[;]  [¶]  (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree[;]  [¶]  [or] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of section 190.2."[6]  (§ 189, subd. (e), italics added.)

The Legislature also added section 1170.95 to the Penal Code.  That provision creates a procedure for offenders previously convicted of felony murder or under a natural and probable consequences theory to obtain the benefits of these changes retrospectively.  Such convicts may petition for relief in the court where they were convicted.  If they make a prima facie showing they are entitled to have their prior convictions vacated, they are entitled to receive "a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not . . . previously been sentenced."  (§ 1170.95, subds. (c), (d)(1).)  "If petitioner is entitled to relief pursuant to this section, murder was charged generically, and the target offense was not charged, the

---

[6]  The limitations in subdivision (e) do not apply when the victim is a peace officer killed while in the course of their duties and where the defendant knew or reasonably should have known as much.  (§ 189, subd. (f).)

petitioner's conviction shall be redesignated as the target offense or underlying felony for resentencing purposes." (*Id.* at subd. (e).)

B.  *Senate Bill No. 1437 Did Not Unconstitutionally Amend Proposition 7 or Proposition 115*

The California Constitution protects the power of voters to act through the initiative process by limiting the Legislature's power to amend voter-approved statutes. (Cal. Const., art. II, § 10, subd. (c); *People v. Kelly* (2010) 47 Cal.4th 1008, 1025 (*Kelly*).)  The Legislature may amend or repeal an initiative statute only with approval from the electorate, which approval may come in the form of a direction contained in the initiative itself.  "The Legislature may amend or repeal an initiative statute by another statute that becomes effective only when approved by the electors unless the initiative statute permits amendment or repeal without the electors' approval."  (Cal. Const., art. II, § 10, subd. (c).)

Proposition 7 did not include a provision allowing the Legislature to amend its provisions.  Section 30 of Proposition 115 permits such amendments without voter approval, but only if approved by a two-thirds vote in each house of the Legislature.  In this case, the question is not whether the Legislature acted in a way that would comply with the requirements for amending the initiative statutes—all agree they did not—but whether Senate Bill No. 1437 amended those provisions in the first place.  The trial court here concluded Senate Bill No. 1437 did amend them, invalidating the enactment, and the district attorney defends that decision on appeal.  Defendant argues Senate Bill No. 1437

13

did not amend the statutory provisions enacted through Propositions 7 and 115, and the trial court should have enforced the new law because "[t]he Legislature remains free to address ' "a related but distinct area' " . . . or a matter that an initiative measure 'does not specifically authorize or prohibit.' " (*Kelly*, *supra*, 47 Cal.4th at pp. 1025-1026.)

A statute amends an initiative when it is "designed to change an existing initiative statute by adding or taking from it some particular provision." (*People v. Cooper*, *supra*, 27 Cal.4th at p. 44.) This does not mean "any legislation that concerns the same subject matter as an initiative, or even augments an initiative's provisions, is necessarily an amendment for these purposes." (*People v. Superior Court* (*Pearson*) (2010) 48 Cal.4th 564, 571 (*Pearson*).) Our Supreme Court has directed that "[i]n deciding whether [a] particular provision amends [an initiative statute], we simply need to ask whether it prohibits what the initiative authorizes, or authorizes what the initiative prohibits." (*Ibid*.) As the Court explained, we should not invalidate a law enacted by the Legislature if it does not impinge on "what the voters contemplated"—" '[t]he voters should get what they enacted, not more and not less.' " (*Ibid*.)

The question is one of statutory interpretation. "When we interpret an initiative, we apply the same principles governing statutory construction. We first consider the initiative's language, giving the words their ordinary meaning and construing this language in the context of the statute and initiative as a whole. If the language is not ambiguous, we presume the voters intended the meaning apparent from that language, and we may not add to the statute or rewrite it to conform to some assumed intent not

14

apparent from that language. If the language is ambiguous, courts may consider ballot summaries and arguments in determining the voters' intent and understanding of a ballot measure." (*Pearson*, *supra*, 48 Cal.4th at p. 571.)

Our colleagues in the Fourth District, Division One, recently gave the questions raised in this appeal comprehensive consideration in a pair of companion decisions. In *People v. Superior Court* (*Gooden*) (2019) 42 Cal.App.5th 270 (*Gooden*), the Court of Appeal applied the *Pearson* test and decided Senate Bill No. 1437 did not amend Proposition 7, which "the electorate intended . . . to increase the punishments, or consequences, for persons who have been convicted of murder." (*Gooden*, at p. 282.) The court concluded Senate Bill No. 1437 "did not address the same subject matter. It did not prohibit what Proposition 7 authorizes by, for example, prohibiting a punishment of 25 years to life for first degree murder or 15 years to life for second degree murder. Nor did it authorize what Proposition 7 prohibits by, for instance, permitting a punishment of less than 25 years for first degree murder or less than 15 years for second degree murder. In short, it did not address punishment at all." (*Gooden*, at p. 282.)

In the same opinion, the court concluded Senate Bill No. 1437 did not amend Proposition 115, which added offenses that could be predicates for applying the felony-murder rule. As the court pointed out, Senate Bill No. 1437 "did not augment or restrict the list of predicate felonies on which felony murder may be based, which is the pertinent subject matter of Proposition 115. . . . Instead, it amended the mental state necessary for

15

a person to be liable for murder, a distinct topic not addressed by Proposition 115's text or ballot materials." (*Gooden*, *supra*, 42 Cal.App.5th at p. 287.)

The court reached the same conclusions in *People v. Lamoureux* (2019) 42 Cal.App.5th 241 (*Lamoureux*), where it considered several additional arguments for finding the section 1170.95 petitioning provision unconstitutional. The district attorney argued there, as here, that allowing people already convicted of murder to petition to have their convictions vacated violates separation of powers principles by "impair[ing] a core function of the judiciary because it provides for the retroactive reopening of final judgments." (*Lamoureux*, at p. 252.)[7] The district attorney also argued S.B. 1437 violates victims' rights to finality of judgments and safety, as protected in Marsy's Law. The court rejected these challenges too, concluding the Legislature has the power to reopen final judgments in criminal cases for ameliorative purposes and doing so does not tread on the role of the judiciary or the rights protected under Marsy's Law. (*Lamoureux*, at pp. 262, 264-266.)

---

[7] In *Lamoureux*, the district attorney also argued allowing people already convicted of murder to petition to have their convictions vacated violates the separation of powers principles by usurping the executive's clemency power. The district attorney does not make that argument in this case. In any event, we do not find the argument persuasive. The Legislature was not acting to "extend 'an act of grace' to petitioners," as the executive does in granting clemency, but rather, "as part of a broad penal reform effort" meant to "ensure our state's murder laws 'fairly address[] the culpability of the individual and assist[] in the reduction of prison overcrowding.'" (*Lamoureux*, *supra*, 42 Cal.App.5th at pp. 255-256.)

We have latitude to depart from the decisions of our sister Courts of Appeal, though we generally exercise our discretion only when supported by good reason. (*Lucent Technologies, Inc. v. Board of Equalization* (2015) 241 Cal.App.4th 19, 35.) We see no good reason for departing from the decisions of the Fourth District, Division One on these issues. On the contrary, like every other Court of Appeal to consider the same question, we conclude their analysis is unimpeachable and join and adopt it. (*People v. Bucio* (2020) 48 Cal.App.5th 300; *People v. Solis* (2020) 46 Cal.App.5th 762; *People v. Cruz* (2020) 46 Cal.App.5th 740; *People v. Prado* (2020) 49 Cal.App.5th 480; *People v. Smith* (2020) 49 Cal.App.5th 85, review granted July 22, 2020, S262835.)

1. *Senate Bill No. 1437 Did Not Amend Proposition 7*

Proposition 7 set the penalties for murder, not the elements of the crime of murder. (See Prop. 7, §§ 1-12.) Senate Bill No. 1437 left the punishment for murder unchanged, but altered the elements required to convict an accused of murder. (§§ 188, subd. (a)(3), & 189, subd. (e).) Specifically, Senate Bill No. 1437 changed the minimum intent required to sustain a murder conviction by amending sections 188 and 189. That change did not amend the statutory provisions enacted by the voters in passing Proposition 7. (See *People v. Banks* (2015) 61 Cal.4th 788, 801 [" 'the definition of crimes generally has not been thought automatically to dictate what should be the proper penalty.' "].) Senate Bill No. 1437 simply did not address any matter Proposition 7 specifically authorizes or prohibits. Since the Legislature is not barred from passing laws in areas

17

related to but distinct from those addressed in an initiative, Proposition 7 was no bar to their passing Senate Bill No. 1437. (*Kelly*, *supra*, 47 Cal.4th at pp. 1025-1026.)

The Proposition 7 ballot materials confirm the point. The initiative's primary focus was implementing the death penalty. (1978 Ballot Pamp., *supra*, argument in favor of Prop. 7, p. 34 [calling Proposition 7 "the nation's toughest, most effective death penalty law"].) Supporters invoked criminals who killed intentionally—specifically Charles Manson and the Zodiac Killer—to justify the change to the law. (*Ibid.*) Neither the felony-murder rule nor the natural and probable consequences doctrine factored into their arguments. (*Id.* at pp. 32-35.) Supporters raised mens rea only to assure voters that an accused who was not the actual killer could *not* receive a sentence of death or life without parole absent intent to aid in the commission of the murder. (*Id.* at p. 35; Prop. 7, § 6.) Senate Bill No. 1437 does not change that punishment.

Nor does section 1170.95 amend the statutory provisions enacted by Proposition 7. Section 1170.95 creates a procedure for vacating a murder conviction when the person convicted of murder did not personally kill anyone, act with the intent to kill, or participate in a felony with reckless indifference to human life. (§ 1170.95, subd. (d)(2).) The Legislature's concern was not that murderers are, or had been, sentenced too harshly; rather, it was that those who do not meet the mens rea requirements set forth in sections 188 and 189 should not be, or should not have been, convicted of murder, regardless the specifics of the punishment. (See Stats. 2018, ch. 1015, § 1, subd. (e) [discussing

18

"culpability of the individual"].)  We, therefore, conclude section 1170.95 does not amend Proposition 7.

The district attorney argues Proposition 7 amended section 190 to set the minimum term for first degree murder at 25 years to life and to increase the punishment for second degree murder from a determinate term triad to 15 years to life.  He argues, "It is unambiguous that Proposition 7 set the penalties for murder which may not be changed by the Legislature unilaterally.  The amendments to Penal Code sections 188 and 189 effectively change the penalties for murder by changing who may be prosecuted for murder as defined in 1978.  The Legislature cannot do indirectly [what] it may not do directly . . . ."  In other words, the district attorney contends that "when the voters passed Proposition 7, they specifically intended to increase the penalty for defendants convicted of either first or second degree murder as it was then defined and long-recognized by California courts.  Senate Bill 1437 now unconstitutionally seeks to prevent the imposition of voter-approved 15 years-to-life or 25 years-to-life sentences; instead, it mandates resentencing to terms far below that which was mandated by the people."

As the *Gooden* court explained, "the language of Proposition 7 demonstrates the electorate intended the initiative to increase the punishments, or consequences, for persons who have been convicted of murder.  Senate Bill 1437 did not address the same subject matter.  It did not prohibit what Proposition 7 authorizes by, for example, prohibiting a punishment of 25 years to life for first degree murder or 15 years to life for second degree murder.  Nor did it authorize what Proposition 7 prohibits by, for instance,

19

permitting a punishment of less than 25 years for first degree murder or less than 15 years for second degree murder. In short, it did not address punishment at all." (*Gooden*, *supra*, 42 Cal.App.5th at p. 282.)

In short, as the *Gooden* court held, "Senate Bill 1437 presents a classic example of legislation that addresses a subject related to, but distinct from, an area addressed by an initiative." (*Gooden*, *supra*, 42 Cal.App.5th at p. 282.) "The Legislature is free to enact such legislation without voter approval." (*Ibid.*) We conclude the trial court erred by holding otherwise.

2. *Senate Bill No. 1437 Did Not Amend Proposition 115*

Although Proposition 115, unlike Proposition 7, amended the definition of murder, we nevertheless conclude S.B. 1437 did not amend Proposition 115. As we discussed *ante*, the key portions of Proposition 115 at issue are those that added to section 189 kidnapping, train wrecking, sodomy, oral copulation, and forcible sexual penetration to the list of predicate felonies for first degree murder. (Prop. 115, § 9.) Since Senate Bill No. 1437 also changed the circumstances under which an accused may be convicted for murder, the two enactments do address related subject matter. However, that does not end the analysis. The question "we must ask ourselves is whether Senate Bill 1437 addresses a matter that the initiative specifically authorizes or prohibits." (*Gooden*, *supra*, 42 Cal.App.5th at p. 287.)

The Fourth District, Division One, concluded it does not, and we agree. "Senate Bill 1437 did not augment or restrict the list of predicate felonies on which felony murder

may be based, which is the pertinent subject matter of Proposition 115. It did not address any other conduct which might give rise to a conviction for murder. Instead, it amended the mental state necessary for a person to be liable for murder, a distinct topic not addressed by Proposition 115's text or ballot materials." (*Gooden*, *supra*, 42 Cal.App.5th at p. 287, fn omitted.)

It does not matter that Proposition 115 included the entire text of section 189, including the unchanged provisions defining the offense. The California Constitution required the inclusion of the unchanged language. (See Cal. Const., art. IV, § 9; *County of San Diego v. Commission on State Mandates* (2018) 6 Cal.5th 196, 206 ["a statute must be reenacted in full as amended if any part of it is amended"].) Technical reenactment of this sort does not prevent the Legislature from amending portions of a reenacted section that are not "integral to accomplishing the electorate's goals in enacting the initiative" unless there are "other indicia . . . that voters reasonably intended to limit the Legislature's ability to amend that part of the statute." (*County of San Diego*, at p. 214.) "When technical reenactments are required under article IV, section 9 of the Constitution—yet involve no substantive change in a given statutory provision—the Legislature in most cases retains the power to amend the restated provision through the ordinary legislative process." (*Ibid.*)

That is precisely the situation here. Proposition 115 "restates a statutory provision in full (§ 189) to comply with constitutional mandates. Further, . . . there are no indicia in the language of the initiative or its ballot materials indicating the voters intended to

21

address any provision of section 189, except the list of predicate felonies for purposes of the felony-murder rule.  Therefore, we conclude the limiting language in Proposition 115 . . . does not preclude the Legislature from amending provisions of the reenacted statute that were subject to technical restatement to ensure compliance with article IV, section 9 of the California Constitution." (*Gooden*, *supra*, 42 Cal.App.5th at p. 288, fn. omitted.)

For all these reasons and the additional reasons set out in *Gooden*, we conclude Senate Bill No. 1437 did not amend Proposition 7 or Proposition 115.  "[T]he voters who approved Proposition 7 and Proposition 115 got, and still have, precisely what they enacted—stronger sentences for persons convicted of murder and first degree felony-murder liability for deaths occurring during the commission or attempted commission of specified felony offenses." (*Gooden*, *supra*, 42 Cal.App.5th at p. 289.)

C. *Section 1170.95 Does Not Violate Separation of Powers Principles*

The district attorney argues the retroactive application of section 1170.95 to prisoners serving final sentences constitutes a separation of powers violation because it permits final judgments of conviction to be vacated.  In other words, it encroaches upon a core function of the judiciary in resolving specific controversies between parties.  The Fourth District, Division One, rejected this argument in *Lamoureux*, *supra*, 42 Cal.App.5th at pp. 257-264.  We find their comprehensive analysis persuasive.

The California Constitution divides power among three coequal government branches—the Legislature (Cal. Const., art. IV, § 1), the executive (Cal. Const., art. V, § 1), and the judiciary (Cal. Const., art. VI, § 1). (*People v. Bunn* (2002) 27 Cal.4th 1, 14

22

(*Bunn*); *Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1102.)  It vests each branch with certain essential or core functions that "may not be usurped by another branch."  (*Bunn*, at p. 14.)  "Protection of those core functions is guarded by the separation of powers doctrine and is embodied in a constitutional provision, which states that one branch of state government may not exercise the powers belonging to another branch."  (*Perez v. Roe 1* (2006) 146 Cal.App.4th 171, 176-177 (*Roe 1*); see Cal. Const., art. III, § 3.)  This separation of powers notwithstanding, "it is well understood that the branches share common boundaries [citation], and no sharp line between their operations exists."  (*Bunn*, at p. 14.)

"A core function of the Legislature is to make statutory law, which includes weighing competing interests and determining social policy.  A core function of the judiciary is to resolve specific controversies between parties."  (*Roe 1*, *supra*, 146 Cal.App.4th at p. 177.)  In performing this function, "courts interpret and apply existing laws."  (*Ibid.*)

In his separation of powers argument, the district attorney relies primarily on the Supreme Court's companion cases, *Bunn* and *People v. King* (2002) 27 Cal.4th 29 (*King*), which adopted the federal separation of powers analysis of *Plaut v. Spendthrift Farm, Inc.* (1995) 514 U.S. 211.  (*Bunn*, *supra*, 27 Cal.4th at pp. 5, 22-23; *King*, at p. 31.)  At bottom, the district attorney's argument is that *Bunn* and *King* teach that a final judgment may never be reopened or vacated unless legislation authorizing such reconsideration was in effect before the judgment became final.

23

We agree with *Lamoureux* that such a broad interpretation is not supported. (*Lamoureux*, *supra*, 42 Cal.App.5th at p. 260.) *Bunn* and *King* announced a narrow rule of law applicable to statutes of limitation: "If a criminal complaint is dismissed because the statute of limitations has run, and the Legislature later retroactively expands the statute of limitations before that ruling becomes final, then the new limitations period will apply. If the Legislature changes the limitations period after the time for appeal has expired or the ruling has completed its journey through the entire appellate process, however, the Legislature's attempt to revive the criminal action violates the separation of powers doctrine." (*Roe 1*, *supra*, 146 Cal.App.4th at p. 177; see *Bunn*, *supra*, 27 Cal.4th at p. 5; *King*, *supra*, 27 Cal.4th at p. 31.) As the Supreme Court explained in *King*, *Bunn* held "separation of powers principles preclude retroactive application of *refiling legislation* in cases where the prior judgment of dismissal was entered or finally upheld before the legislation took effect." (*King*, at p. 31, italics added.) Thus, legislation violates the separation of powers doctrine if it retroactively expands a statute of limitations to render timely charges that were previously dismissed as untimely.

Senate Bill No. 1437 does not qualify as refiling legislation. It restricts the circumstances under which a person can be liable for murder under the felony-murder rule or the natural and probable consequences doctrine. It further allows people who were previously convicted of murder under those theories to petition the court to have their convictions vacated. Not only does Senate Bill No. 1437 not involve the expansion of a statute of limitations (or a statute of limitations at all), it has the opposite effect of

24

refiling legislation; it reduces the number of people who can be liable for murder by restricting the scope of conduct for which a person can be convicted. Because Senate Bill No. 1437 does not constitute, and is not similar to, refiling legislation, the separation of powers principles announced in *Bunn* and *King* simply do not apply.

We agree with the *Lamoureux* court that there is no reason to expand those separation of powers principles to reach final judgments of conviction. (*Lamoureux*, *supra*, 42 Cal.App.5th at pp. 260-261.) The district attorney has not directed us to any authority "applying the *Bunn* and *King* separation of powers analysis to bar legislation allowing the reopening of already-final judgments of *conviction* (as distinct from already-final judgments of *dismissal*), and [like *Lamoureux*] we have found none." (*Lamoureux*, at p. 261.) Moreover, doing so would threaten the "substantial precedent [of] remedial legislation authorizing the ameliorative reopening of final judgments of conviction to benefit criminal defendants." (*Id*. at p. 262.) *Lamoureux* describes the legislation that would be affected at length, and we need not repeat it here. (*Id*. at pp. 262-263.) Suffice it to say, the effects would be substantial.

We therefore conclude Senate Bill No. 1437 does not violate the separation of powers doctrine.

D. *Section 1170.95 Does Not Violate Marsy's Law*

The district attorney argues Senate Bill No. 1437 violates victims' rights to finality of judgments, as protected in Marsy's Law, which the voters passed by initiative as Proposition 9. (Ballot Pamp., Gen. Elec. (Nov. 4, 2008) text of Prop. 9 (Proposition 9).)

25

In addition, he argues Senate Bill No. 1437 violates Marsy's Law by depriving victims of their right to safety. *Lamoureux* rejected these arguments, and we agree with its reasoning and analysis.

Marsy's Law strengthened a " 'broad spectrum of victims' rights' " by amending the California Constitution and adding provisions to the Penal Code. (*Lamoureux*, *supra*, 42 Cal.App.5th at p. 264.) The initiative added numerous specific victims' rights to the Constitution, including the rights "[t]o a speedy trial and a prompt and final conclusion of the case and any related post-judgment proceedings" and "[t]o have the safety of the victim, the victim's family, and the general public considered before any parole or other post-judgment release decision is made." (Cal. Const., art. I, § 28, subds. (b)(9), (b)(16).) Marsy's Law cannot be amended except by ballot initiative or by vote of a two-thirds majority in both houses of the Legislature. (Ballot Pamp., Gen. Elec. (Nov. 4, 2008) (2008 Ballot Pamphlet) text of Prop. 9, § 9, p. 132.)

To promote finality, Marsy's Law "substantially amended Penal Code provisions pertaining to parole." (*Lamoureux*, *supra*, 42 Cal.App.5th at p. 264; 2008 Ballot Pamphlet, *supra*, text of Prop. 9, §§ 5.1-5.3 at pp. 130-132, amending §§ 3041.5, 3043, 3044.) However, Marsy's Law "did not foreclose post-judgment proceedings altogether." (*Lamoureux*, at p. 264.) Instead, it "expressly contemplated the availability of such postjudgment proceedings," by referring to " 'parole [and] other post-conviction release proceedings,' " and to " 'post-conviction release decision[s],' " in general. (*Id*. at pp. 264-265; see Cal. Const., art. I, § 28, subds. (b)(7) & (8).)

26

The district attorney argues Senate Bill No. 1437 violates this right to finality "by granting new and substantial privileges to revisit murder convictions and sentences, whether by trial or plea, for reasons wholly independent of the lawfulness of the convictions." If this argument was sound, it would follow that Marsy's Law prohibits the Legislature from creating *any* new postjudgment criminal proceedings absent a two-thirds majority vote in each house of the Legislature. However, the district attorney does not explain how such a sweeping prohibition can be derived from the right to finality. Instead, he quotes the initiative, selectively focusing on words related to finality.

Although we recognize we should, as a general matter, afford Marsy's Law "a broad interpretation protective of victims' rights" (*Santos v. Brown* (2015) 238 Cal.App.4th 398, 418), we decline to interpret the law so broadly to find that voters intended to impede the Legislature from creating new postjudgment proceedings. "It would be anomalous and untenable for us to conclude, as the People impliedly suggest, that the voters intended to categorically foreclose the creation of any new postjudgment proceedings not in existence at the time Marsy's Law was approved simply because the voters granted crime victims a right to a 'prompt and final conclusion' of criminal cases." (*Lamoureux*, *supra*, 42 Cal.App.5th at p. 265.)

The district attorney also argues the resentencing procedure in section 1170.95 does not "honor[] the victims' right" to safety. Even assuming the disposition of a section 1170.95 petition is a postjudgment release decision, if the trial court concludes a petitioner is entitled to have his or her murder conviction vacated and the sentence

27

recalled, it must then "resentence the petitioner on any remaining counts in the same manner as if the petitioner had not . . . previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1170.95, subd. (d)(1).) In such resentencing, "the court may weigh the same sentencing factors it considers when it initially sentences a defendant, including whether the defendant presents 'a serious danger to society' and '[a]ny other factors [that] reasonably relate to the defendant or the circumstances under which the crime was committed.' " (*Lamoureux*, *supra*, 42 Cal.App.5th at p. 266; Cal. Rules of Court, rule 4.421(b)(1), (c).) We agree with the Fourth District, Division One that "[a]t minimum, the trial court's ability to consider these factors during resentencing ensures the safety of the victim, the victim's family, and the general public are 'considered' as required by Marsy's Law." (*Lamoureux*, at p. 266.)

We therefore conclude section 1170.95 does not violate Marsy's Law.

DISPOSITION

We reverse the judgment of the trial court and remand for further proceedings on the merits of defendant's petition under Penal Code section 1170.95.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____
J.

We concur:

MILLER _____
            Acting P. J.
RAPHAEL _____
            J.

28