Filed 10/20/20

# CERTIFIED FOR PARTIAL PUBLICATION[*]

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>MARIO MARQUEZ,<br><br>  Defendant and Appellant. | G058719<br><br>(Super. Ct. No. FSB038602-1)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of San Bernardino County, Michael A. Smith, Judge.  (Retired judge of the San Bernardino Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Reversed and remanded.  Request for Judicial Notice.  Granted.

Reed Webb, under appointment by the Court of Appeal, for Defendant and Appellant.

James R. Secord, District Attorney, and Jason Anderson, Deputy District Attorney, for Plaintiff and Respondent.

\*          \*          \*

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part IV of the Discussion section.

## INTRODUCTION

Mario Marquez appealed from a postjudgment order striking his petition for resentencing made pursuant to Penal Code section 1170.95 (section 1170.95), which was enacted as part of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015, § 4). The trial court struck Marquez's petition on the ground that Senate Bill No. 1437 violates article II, section 10, subdivision (c) of the California Constitution by amending Proposition 7 (Ballot Pamp., Gen. Elec. (Nov. 7, 1978) text of Prop. 7) and Proposition 115 (Ballot Pamp., Primary Elec. (June 5, 1990) text of Prop. 115). Respondent argues, in addition, that retroactive application of Senate Bill No. 1437 by means of the petitioning process of section 1170.95 conflicts with the Victims' Bill of Rights Act of 2008 (Marsy's Law) and violates the separation of powers doctrine.

We reverse with directions to consider the petition on the merits. We partially publish this opinion because the issues of whether Senate Bill No. 1437 conflicts with Marsy's Law and whether Senate Bill No. 1437 violates the separation of powers doctrine have not been addressed in a published opinion of this division. On those issues we conclude that Senate Bill No. 1437 neither conflicts with Marsy's Law nor violates the separation of powers doctrine. In the nonpublished part of the opinion we conclude Senate Bill No. 1437 does not unconstitutionally amend Proposition 7 or Proposition 115.

## BACKGROUND

In 2007, a jury found Marquez guilty of first degree murder (Pen. Code, §§ 187, subd. (a), 189, subd. (a)), second degree robbery (*id.*, §§ 211, 212.5, subd. (c)), carjacking (*id.*, § 215, subd. (a)), willful evasion of a police officer with reckless disregard for the safety of persons or property (Veh. Code, § 2800.2, subd. (a)), and unlawful possession of a firearm by a felon (Pen. Code, § 12021, subd. (a)(1)). The jury found it to be true that the principal had been armed with a firearm during the commission of these crimes (*id*, § 12022, subd. (a)(1)), and found that Marquez had been

2

convicted of a prior serious or violent felony (*id.*, §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), had served a prior prison term (*id.*, § 667.5, subd. (b)), and had been convicted of a prior serious felony (*id.*, § 667, subd. (a)(1)).

The trial court sentenced Marquez to a term of 70 years 8 months to life in prison. This sentence consisted of a total determinate term of 18 years 8 months for carjacking, the firearm enhancement, the prior conviction enhancements, evading an officer, and possession of a firearm, followed by an indeterminate term of 50 years to life for murder, plus one year for the firearm enhancement. A panel of this court affirmed the judgment (modified to strike the one-year sentence enhancement under Penal Code 667.5, subdivision (b)) in *People v. Marquez.* (Jan. 14, 2010, G041202) (nonpub. opn.). That opinion sets out the underlying facts of this case.[1]

In 2018, the Legislature enacted Senate Bill No. 1437, which limited accomplice liability under the felony murder rule and the natural and probable consequences doctrine by amending Penal Code sections 188 and 189. (See *People v. Solis* (2020) 46 Cal.App.5th 762, 768 (*Solis*); *People v. Cruz* (2020) 46 Cal.App.5th 740, 755 (*Cruz*).) Senate Bill No. 1437 also added section 1170.95 to create a procedure by which persons previously convicted of felony murder or murder under a natural and probable consequences theory may petition the superior court to have their murder convictions vacated and be resentenced if they could not now be convicted of murder under the amended versions of Penal Code sections 188 and 189. (*Solis, supra*, at p. 775; *Cruz, supra*, at p. 753.)

In March 2019, Marquez filed a petition for resentencing pursuant to section 1170.95. He alleged that he had been convicted of murder pursuant to the felony

---

[1] Respondent has filed a request that we take judicial notice of our opinion in *People v. Marquez, supra*, G041202, and a Legislative Counsel Bureau opinion letter dated March 12, 2018. Marquez has filed no opposition. We grant the request for judicial notice. (Evid. Code, §§ 450, 452, subds. (a), (d), 459, subd. (a).)

murder rule or the natural and probable consequences doctrine and that he satisfied the other requirements for relief.

In November 2019, the trial court denied Marquez's petition. The court concluded that Senate Bill No. 1437 violated article II, section 10, subdivision (c) of the California Constitution by materially amending Proposition 7, which was passed by the electorate in 1978, and Proposition 115, which was passed by the electorate in 1990. The court did not consider the petition on its merits. Marquez timely appealed.

## DISCUSSION

## I.

### Standard of Review and Relevant Legal Principles

The issue whether Senate Bill No. 1437 is unconstitutional is reviewed under the de novo standard. (*People v. Lippert* (2020) 53 Cal.App.5th 304, 311 (*Lippert*); *Solis, supra*, 46 Cal.App.5th at p. 771.)

Under article II, section 10, subdivision (c) of the California Constitution, the Legislature may amend or repeal an initiative statute only with the electorate's approval unless the initiative statute provides otherwise. "The California Constitution protects the power of voters to act through the initiative process by limiting the Legislature's power to amend voter-approved statutes. [Citations.] The Legislature may amend or repeal an initiative statute only with approval from the electorate, which approval may come in the form of a direction contained in the initiative itself." (*People v. Johns* (2020) 50 Cal.App.5th 46, 60 (*Johns*).)

"A statute amends an initiative when it is 'designed to change an existing initiative statute by adding or taking from it some particular provision.'" (*Johns, supra*, 50 Cal.App.5th at p. 61, quoting *People v. Cooper* (2002) 27 Cal.4th 38, 44.) In determining if the Legislature has amended a voter initiative, the relevant question is whether the statute "prohibits what the initiative authorizes or authorizes what the

4

initiative prohibits." (*People v. Superior Court (Pearson)* (2010) 48 Cal.4th 564, 571.) The voters get only what they enacted, "'not more and not less.'" (*Ibid.*)  The Legislature is free to address matters that are related to, but distinct from, the subjects covered by the initiative or which the initiative does not specifically permit or prohibit.  (*Ibid*.)

When deciding whether a legislative enactment unconstitutionally conflicts with a voter initiative, we must, on the one hand, apply a strong presumption of the constitutionality of the Legislature's acts (*Amwest Surety Ins. Co. v. Wilson* (1995) 11 Cal.4th 1243, 1253, 1256) and, on the other hand, fulfill our obligation to guard the People's right to enact laws through the initiative process (*People v. Kelly* (2010) 47 Cal.4th 1008, 1025).

## II.

### Section 1170.95 Does Not Conflict with Marsy's Law.

Respondent argues Senate Bill No. 1437 violates the California Constitution as amended by Marsy's Law because the postjudgment procedure under section 1170.95 conflicts with a crime victim's right to prompt and final conclusion of criminal cases by "reopening the convictions which [Marsy's Law] sought to make final."  Every published opinion that has addressed that issue has concluded that retroactive application of Senate Bill No. 1437 by means of the petitioning procedures of section 1170.95 does not conflict with Marsy's Law.  (*People v. Lombardo* (2020) 54 Cal.App.5th 553, 562-565 (*Lombardo*); *Lippert, supra*, 53 Cal.App.5th at p. 313; *People v. Nash* (2020) 52 Cal.App.5th 1041, 1070-1072 (*Nash*); *Johns, supra*, 50 Cal.App.5th at pp. 68-70; *People v. Bucio* (2020) 48 Cal.App.5th 300, 312-313 (*Bucio*); *People v. Lamoureux* (2019) 42 Cal.App.5th 241, 264-266 (*Lamoureux*).)  We agree with these opinions and conclude section 1170.95 does not violate Marsy's Law.

Marsy's Law, which was passed by the California electorate in 2008 as Proposition 9, amended the California Constitution and added provisions to the Penal

Code in order to strengthen and increase the number of crime victims' rights. (*Johns, supra*, 50 Cal.App.5th at p. 68.) Relevant here are constitutional amendments regarding prompt resolution and finality of criminal cases. Marsy's Law amended the California Constitution to grant crime victims the right "[t]o a speedy trial and a prompt and final conclusion of the case and any related post-judgment proceedings" (Cal. Const., art. I, § 28, subd. (b)(9)), and "[t]o have the safety of the victim, the victim's family, and the general public considered before any parole or other post-judgment release decision is made" (*id*., subd. (b)(16)).[2] (See *Johns, supra*, 50 Cal.App.5th at p. 68.)

Marsy's Law cannot be amended except by ballot measure or by a supermajority vote in both houses of the Legislature. (*Nash, supra*, 52 Cal.App.5th at p. 1070; *Johns, supra*, 50 Cal.App.5th at p. 68.) Senate Bill No. 1437 was approved by two-thirds of the California State Senate but only by a simple majority of the Assembly, and was never submitted to the voters for approval. (*Lombardo, supra*, 54 Cal.App.5th at p. 559, fn. 2.)

Although Marsy's Law must be interpreted broadly, we decline to read it so broadly as to restrict or eliminate altogether the Legislature's ability to create new postjudgment proceedings. (*Lombardo, supra*, 54 Cal.App.5th at p. 563; *Lippert, supra*, 53 Cal.App.5th at p. 313; *Nash, supra*, 52 Cal.App.5th at p. 1071; *Johns, supra*, 50 Cal.App.5th at p. 68; *Bucio, supra*, 48 Cal.App.5th at pp. 312-313; *Lamoureux, supra,* 42

---

[2] The Voters' findings and declarations in Marsy's Law became article I, section 28, subdivision (a) of the California Constitution. Subdivision (a)(6) of article I, section 28 reads: "Victims of crime are entitled to finality in their criminal cases. Lengthy appeals and other post-judgment proceedings that challenge criminal convictions, frequent and difficult parole hearings that threaten to release criminal offenders, and the ongoing threat that the sentences of criminal wrongdoers will be reduced, prolong the suffering of crime victims for many years after the crimes themselves have been perpetrated. This prolonged suffering of crime victims and their families must come to an end." (Cal. Const., art. I, § 28, subd. (a)(6); see *Lamoureux, supra*, 42 Cal.App.5th at p. 266.) These findings and declarations are not an independent source of enforceable rights. (*Lombardo, supra*, 54 Cal.App.5th at p. 563; *Lamoureux, supra*, at p. 266.)

Cal.App.5th at pp. 264-266.) "Nothing in Marsy's Law restricts the Legislature from creating new postconviction procedures, such as section 1170.95." (*Bucio, supra*, 48 Cal.App.5th at pp. 312-313; see *Nash, supra*, 52 Cal.App.5th at pp. 1071-1072 ["Neither the plain language of the initiative nor the ballot material suggests that in enacting Proposition 9, voters intended to prohibit the Legislature from creating new postjudgment proceedings"].) Senate Bill No. 1437 neither prohibits what Marsy's Law authorizes nor authorizes what it prohibits. (*People v. Superior Court (Pearson), supra*, 48 Cal.4th at p. 571.)

The court in *Lamoureux* explained, "[i]t would be anomalous and untenable for us to conclude, as the People impliedly suggest, that the voters intended to categorically foreclose the creation of any new postjudgment proceedings not in existence at the time Marsy's Law was approved simply because the voters granted crime victims a right to a 'prompt and final conclusion' of criminal cases." (*Lamoureux, supra*, 42 Cal.App.5th at p. 265, quoting Cal. Const., art. I, § 28, subd. (b)(9).)

Respondent argues that Senate Bill No. 1437 violates victims' rights to finality by "granting new and substantial privileges to revisit murder convictions and sentences, whether by trial or plea, for reasons wholly independent of the lawfulness of the convictions." The court in *Johns* had this response to precisely the same argument: "If this argument were sound, it would follow that Marsy's Law prohibits the Legislature from creating *any* new postjudgment criminal proceedings absent a two-thirds majority vote in each house of the Legislature. But the district attorney does not explain how such a sweeping prohibition can be derived from the right to finality. Instead, he quotes the initiative, selectively focusing on words related to finality." (*Johns, supra*, 50 Cal.App.5th at p. 69.) The same is true in the case before us.[3]

---

[3] In other cases, the argument has been made that section 1170.95 violates a victim's right to have the safety of the victim, the victim's family, and the general public considered before a postjudgment decision about a defendant's release may be made.

7

**III.**

**Section 1170.95 Does Not Violate the Separation
of Powers Doctrine.**

Respondent argues section 1170.95 violates the separation of powers doctrine by encroaching on the judiciary's core function of resolving specific controversies between the parties. Every published opinion that has addressed the issue has concluded that section 1170.95 does not violate the separation of powers doctrine. (*Lippert, supra*, 53 Cal.App.5th at p. 313; *Nash, supra*, 52 Cal.App.5th at pp. 1073-1081; *Johns, supra*, 50 Cal.App.5th at pp. 66-67; *Bucio, supra*, 48 Cal.App.5th at pp. 313-314; *People v. Flores* (2020) 44 Cal.App.5th 985, 990, fn. 2; *Lamoureux, supra,* 42 Cal.App.5th at pp. 257-264.) We agree with these opinions and reach the same conclusion.

The California Constitution creates a system of government in which power is divided among three coequal branches—the legislature (Cal. Const., art. IV, § 1), the executive (Cal. Const., art. V, § 1), and the judiciary (Cal. Const., art. VI, § 1). (*People v. Bunn* (2002) 27 Cal.4th 1, 14.) The constitution vests each branch with essential or core functions: The separation of powers doctrine holds that one branch of government may not exercise an essential or core function belonging to another branch. (*Ibid.*) The purpose of the doctrine is to prevent a single person or group from holding all fundamental powers of government (*Manduley v. Superior Court* (2002) 27 Cal.4th 537, 557.) The dividing lines among branches is not sharp, and the branches are somewhat interdependent on each other. (*Briggs v. Brown* (2017) 3 Cal.5th 808, 846; *People v. Bunn, supra,* 27 Cal.4th at p. 14.)

"'A core function of the Legislature is to make statutory law, which includes weighing competing interests and determining social policy. A core function of

_____

(See, e.g., *Lamoureux, supra,* 42 Cal.App.5th at p. 266.) Respondent does not make that argument here.

8

the judiciary is to resolve specific controversies between parties.' [Citation.] In performing this function, 'courts interpret and apply existing laws.'" (*Johns, supra*, 50 Cal.App.5th at pp. 66-67.)

Respondent argues section 1170.95 encroaches on the core judicial function of resolving specific controversies between the parties by mandating that final judgments, which are entitled to protection, be vacated if the defendant satisfies the requirements for relief. Respondent relies primarily on *Bunn, supra*, 27 Cal.4th 1 and *People v. King* (2002) 27 Cal.4th 29 (*King*), which adopted the federal separation of powers analysis of *Plaut v. Spendthrift Farm, Inc.* (1995) 514 U.S. 211.

*Bunn* and *King* are inapposite: Both addressed whether the separation of powers doctrine barred application of a statute authorizing the filing of a molestation charge even after the offense previously had been dismissed by the court as time-barred. (*King, supra*, 27 Cal.4th at p. 31; *Bunn, supra*, 27 Cal.4th at p. 5.) The California Supreme Court concluded in both cases that the refiling legislation could not be applied to reopen court cases that had been dismissed if the dismissals had become final judgments before the refiling legislation became effective. (*Bunn, supra*, at p. 5; see *King, supra*, at p. 31.)

*Bunn* held only that "separation of powers principles preclude retroactive application of refiling legislation in cases where the prior judgment of dismissal was entered or finally upheld before the legislation took effect." (*King, supra*, 27 Cal.4th at p. 31.) "Both *Plaut* and *Bunn* confronted legislative amendments to statutes of limitation that resulted in the revival of time-barred actions where judgment was final, and both courts concluded that in cases where judgment was final, such legislation violated the separation of powers doctrine by reopening final judgments." (*Nash, supra*, 52 Cal.App.5th at pp. 1078-1079.)

Senate Bill No. 1437 neither constitutes nor is similar to refiling legislation, nor does Senate Bill No. 1437 expand a statute of limitations. (*Johns, supra*, 50

Cal.App.5th at p. 67.)  Senate Bill No. 1437 restricts the circumstances under which a person can be held liable for murder under the felony murder rule or the natural and probable consequences doctrine and, by reducing the number of people who could be liable for murder, has the opposite effect of refiling legislation.  (*Ibid.*)

In *Lamoureux*, the Court of Appeal described the conclusions reached in *Bunn* and *King* as "unsurprising" given that a purpose of the separation of powers doctrine is to protect individual liberty.  (*Lamoureux, supra,* 42 Cal.App.5th at p. 260.) "A bright-line rule prohibiting interference with final judgments of dismissal in favor of criminal defendants dovetails with this aim, as it eliminates the risk criminal defendants will be subject to retrial for the same offenses of which they were acquitted and—if convicted the second time around—deprived of their individual liberty interests by means of incarceration." (*Ibid.*)  In contrast, legislation reopening final judgments is permissible if it does not place individual liberty interests at risk and potentially provides "ameliorative benefits" to a criminal defendant—the only person having a liberty interest at stake in a criminal prosecution.  (*Id*. at p. 261; see *Lippert, supra,* 53 Cal.App.5th at p. 313; *Johns, supra*, 50 Cal.App.5th at p. 68; *Bucio, supra*, 48 Cal.App.5th at p. 314.) Section 1170.95 is not subject to the analysis conducted in *Bunn* and *King*, and does not violate the separation of powers doctrine, because, although section 1170.95 has the effect of reopening final judgments of conviction, it does not place any personal liberty interests at risk and potentially provides ameliorative benefits to criminal defendants. (*Lamoureux, supra*, at p. 61; see *Lippert, supra,* at p. 313 ["To the extent retroactive opening of final judgments implicates individual liberty interests, Senate Bill No. 1437 does not present any risk to those interests"].)

The *Lamoureux* court offered several examples of remedial legislation authorizing the "ameliorative" reopening of final judgments of conviction.  (*Lamoureux, supra*, 42 Cal.App.5th at pp. 262-263; see *Lippert, supra,* 53 Cal.App.5th at p. 313; *Bucio, supra*, 48 Cal.App.5th at p. 314.)  Although the "prevalence" of such legislation

10

was not sufficient reason alone to make section 1170.95 constitutional on separation of powers grounds, it did confirm "there is nothing especially unique about section 1170.95." (*Lamoureux, supra,* 42 Cal.App.5th at p. 263.)

The Court of Appeal in *Nash* built on the analysis of *Lamoureux* to conclude that Senate Bill No. 1437 does not violate the separation of powers doctrine because Senate Bill No. 1437 was "directed at broader penal reform." (*Nash, supra*, 52 Cal.App.5th at p. 1081.) "[T]hat some final judgments will necessarily be reopened pursuant to the change in the law is purely incidental to the broader reformation of the law." (*Ibid.*) The Legislature has full power to define crimes and set penalties, and, by enacting Senate Bill No. 1437, the Legislature redefine the crime of murder as part of a broader penal reform. (*Nash, supra*, at pp. 1080-1081.) Reopening of judgments and resentencing pursuant to section 1170.95 are incidental to this exercise of the Legislature's power to define crimes and, therefore, would not violate the separation of powers doctrine. (*Nash, supra*, at p. 1081.) We also agree with the analysis of *Nash*.

## IV.

### Senate Bill No. 1437 Does Not Materially Amend Proposition 7 or Proposition 115.

The trial court concluded, and respondent argues, that Senate Bill No. 1437 violates article II, section 10, subdivision (c) of the California Constitution by materially amending Proposition 7 and Proposition 115. Proposition 7, passed by the California electorate in 1978, increased the penalties for first and second degree murder. (*Johns, supra*, 50 Cal.App.5th at p. 55.) Proposition 115, passed by the California electorate in 1990, amended the California Constitution to change several procedures applicable in criminal cases. (*Johns, supra*, at p. 56.)

We conclude, as has every published opinion addressing the issue, that Senate Bill No. 1437 does not amend Proposition 7 or Proposition 115. We reach our

11

conclusion on the basis of *Solis, supra*, 46 Cal.App.5th at pages 769, 775-784 and *Cruz, supra*, 46 Cal.App.5th at pages 747, 754-761.

## DISPOSITION

The order striking Marquez's petition for resentencing pursuant to section 1170.95 is reversed and the matter is remanded to the trial court with directions to consider the merits of the petition.


FYBEL, J.

WE CONCUR:


ARONSON, ACTING P. J.


IKOLA, J.